427 So.2d 880 (1982)
Wendell McCARROLL
v.
ASPLUNDH TREE EXPERT COMPANY, et al.
Bonnie McCARROLL
v.
ASPLUNDH TREE EXPERT COMPANY, et al. *881
Felix A. RIGGIO, III
v.
ASPLUNDH TREE EXPERT COMPANY, et al.
Nos. 82-CA-0325 to 82-CA-0327.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
Rehearing Denied February 17, 1983.
Writ Denied April 15, 1983.
*882 J. Thomas Anderson, Bruce Bennett, Hammond, for plaintiff-appellee.
Iddo Pittman, Jr., Hammond, for defendant-appellant.
Before EDWARDS, WATKINS and SHORTESS, JJ.
EDWARDS, Judge.
Asplundh Tree Expert Company, Aetna Casualty and Surety Company (Asplundh's insurer), and Jim T. Tullos, defendants, appeal the trial court's judgment finding Asplundh the negligent cause of an automobile accident and awarding damages of $15,000.00 to Bonnie McCarroll, $25,000.00 to Wendell McCarroll, and $205,592.22 to Felix A. Riggio, III. On appeal, defendants contend that the awards were excessive and an abuse of the trial court's discretion. We amend and affirm.

BACKGROUND FACTS
These consolidated suits arose from a two-vehicle collision which occurred about noon on August 10, 1978. Jim Tullos, an employee of Asplundh, was driving a company truck and had observed an abnormality with its brakes. He sought help from Felix Riggio, III, a service station operator.
Both men left in the truck for an inspection ride. With Tullos driving, Riggio would listen for problems as the brakes were applied. However, while coming off a narrow bridge, the truck encountered an approaching automobile occupied by Bonnie McCarroll, her husband Frank McCarroll, Wendell McCarroll and Melvin Doherty. At this point, the truck's brakes completely failed, and Tullos was unable to avoid sideswiping the McCarroll vehicle.
After trial of the case, the judge found Asplundh negligent with no contributory negligence by any of the plaintiffs. The sole issue on appeal is whether the awards granted to the plaintiffs are excessive.

STANDARD OF REVIEW
In awarding general damages, the trial court has broad discretion in setting the amount. La.Civ.C. art. 1934(3). In Reck v. Stevens, 373 So.2d 498 (La.1979), and Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977), the Louisiana Supreme Court set out the standards to be followed by appellate courts in reviewing general damage awards. In Coco, the court stated:
"We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence." (Citations omitted.) 341 So.2d at 335.
In Reck, the court stated:
"Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much discretion,' La.Civ.C. art. 1934(3) in the award of damages. It is *883 only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, or insufficient. Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case." (Citations omitted.) 373 So.2d at 501.
Thus, in determining whether a trial court has abused its discretion and made an excessive award of general damages, the emphasis is on an analysis of the individual facts and circumstances of the present case. The use of prior similar awards is limited in this determination. As stated by the court in Reck:
"In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) `similar' injuries, see Coco at 341 So.2d 334." 373 So.2d at 501.
With these principles in mind, we will now address the individual general damage awards made in the present case, focusing on the underlying facts to evaluate the discretion exercised by the trial court.

WENDELL McCARROLL
The trial court awarded Wendell compensation of $25,000.00, without any itemization of special and general damages. However, evidence of special damage items does appear in the record and the trial court's judgment indicates it was aware of such damages. Therefore, before we can determine whether there was an excessive general damage award, these items of special damages must be deducted from the $25,000.00 in order to produce the approximate portion awarded for general damages.
Specifically, medical expenses were incurred in the following amounts: $630.00 for treatments by Dr. Charles H. Gideon, Sr.; $115.00 balance to Dr. Roger Blitz for treatment; $120.00 for therapy by the Hammond Therapy Clinic; and $224.00 to Seventh Ward General Hospital for a bone scan (total medical expenses: $1,089.00). As for lost wages, the record indicates that Wendell missed about five weeks of work following the accident, which at his then-hourly wage of $10.19 would equal $2,038.00, without overtime. Assuming a figure of 12 hours weekly for overtime,[1] this would add roughly $917.00 for a total of $2,955.00 in lost wages during this five-week period. Additionally, the record indicates that Wendell did not work the latter half of 1979 because of his injuries, and further lost approximately $8,000.00 in wages. Thus, after deducting a total of $10,955.00 in lost wages and $1,089.00 for medical expenses, this leaves approximately $13,000.00 as the portion awarded for general damages. An examination of the record is now necessary to determine whether this figure is excessive.
On the afternoon of the accident, Wendell went to Dr. Charles H. Gideon, Sr., complaining of pain in his neck, right arm, lower back and numbness in his left leg. Dr. Gideon, a chiropractor, examined Wendell and found him suffering from an acute cervical myofascitis and lumbosacral sprain. Dr. Gideon noted that the patient's stance favored the left side, and that the cervical area was particularly painful.
Wendell made a total of 30 office visits to Dr. Gideon for treatment between August 11 and January 12, 1979. Treatment consisted of traction, muscle stimulations, ultrasonic therapy and manipulation. Dr. Gideon stated Wendell tended to downplay his symptoms rather than complain, and that his tests discounted any malingering. The treatment eased Wendell's back problems, but he still complained of neck pain.
*884 Appellants contend that Wendell's present complaints stem from a preexisting injury to his neck and back which occurred on August 8, 1978. However, this injury was also treated by Dr. Gideon on three office visits, the last of which occurred on the morning of August 10, prior to the accident. After this last treatment, Dr. Gideon released Wendell for return to work that day. Therefore, any prior injury to his neck and back apparently had been rectified before the accident. But even if some aspects of the injuries remained, a tortfeasor takes his victim as he finds him, and he is responsible for the consequences although the resulting damages are greater because of a prior condition which is aggravated by the tort. Reck, supra.
Wendell was also examined by Dr. Roger P. Blitz, an orthopedic surgeon, on March 22, 1979, at which time he was still suffering from neck pain. Dr. Blitz diagnosed Wendell's problem as chronic cervical strain, and prescribed a regimen of stretching exercises. Wendell again visited Dr. Blitz on November 15, 1979, suffering from both cervical and lumbar pain. Dr. Blitz's diagnosis was chronic lumbar pain and therapy sessions with the Hammond Physical Therapy and Rehabilitation Clinic were prescribed. On January 3, 1980, Wendell visited Dr. Blitz again, at which time his lower back had improved, but cervical pain still remained. Dr. Blitz corroborated Dr. Gideon's findings that Wendell was not malingering.
Eileen McCarroll, Wendell's wife, testified that since the accident, his physical activities around the house have curtailed. Although a carpenter, Wendell was forced by his injuries to hire others to build an addition to their house. This was corroborated by the testimony of Russell Hutchinson, a neighbor, who also stated he often had to come over to help Wendell get up from a reclining position.
In short, the record is replete with evidence demonstrating the pain suffered by Wendell as a result of this accident. Based on our examination, we cannot say that the trial court abused its great discretion in making such an award of general damages.

BONNIE McCARROLL
The trial court awarded Bonnie $15,000.00, again without any itemization of general and special damages. However, proof of special damages is present in the record, and was referred to by the trial court in its judgment. As before, these must be deducted to produce the approximate general damage award.
The only medical bill incurred by Bonnie not paid by Aetna was one for $496.00 from Dr. Gideon. As for lost wages, the record indicates that due to her injuries, Bonnie had to quit working after the accident at her sister's store, from which she was earning wages of $100.00 a week. She had been working there for two and one-half years prior to the accident. The testimony of Patsy Neal, the store owner, indicates that the store was sold to third parties around June of 1979. However, it is not clear if it subsequently remained open. If the store closed, that of course would have terminated Bonnie's job. Therefore, we will only compute lost wages from the date of the accident up to June, 1979, excepting the three-week period of October 19 to November 9, 1978, when Bonnie attempted to work at Elmer's Candy Company, but was prevented by her back pain.
This 38-week period amounts to $3,500.00 in lost wages, and when added to the $496.00 in medical expenses, produces a total of $3,996.00 in special damages. Deducting this figure from the $15,000.00, leaves an approximate award of $11,000.00 for general damages, which must now be examined for excessiveness.
The record indicates that Bonnie saw Dr. Gideon on the evening of the accident, complaining of a stiff neck and headaches. An examination by Dr. Gideon revealed the subluxation of six vertebrae and acute traumatic intervertebral disc syndrome. Treatments of traction, heat and manipulation were administered over a span of 19 office visits from August 11, 1978 to January 4, *885 1979. Dr. Gideon felt that she had a ten percent permanent partial disability and will need treatment for an undetermined period of time.
Bonnie was also examined by Dr. Blitz on March 22, 1979, at which time she was suffering from headaches, tightness in her neck, and occasional lower back pain. Dr. Blitz observed spasms in her neck area, and diagnosed her injury as a chronic cervical strain. He prescribed stretching exercises with heat, and felt that no permanent impairment should result.
The testimony of Patsy Neal, Bonnie's sister, and Joyce Colkmire, a friend, indicate that after the accident, Bonnie was not as active as beforehand. Joyce additionally stated that she had to help clean Bonnie's house and care for her little girl for about three months following the accident. Bonnie has resumed some of her prior activities since the accident, but at a lesser extent.
We hold that the above evidence and record as a whole support the award of general damages. We find no abuse of discretion by the trial court.

 FELIX A. RIGGIO, III
The trial court made the following award
to Mr. Riggio:
Loss of Wages ................. $ 15,000.00
Past Medical Expenses ......... 15,592.22
Future Medical Expenses ....... 25,000.00
General Damages ............... 150,000.00
 ___________
TOTAL $205,592.22

Appellants contend that the above amounts are excessive and should be reduced. We will examine each category for its validity.
In the award for past medical expenses, we find that the following items should be deducted because no evidence exists in the record to support their inclusion:

Highland Park Hospital............ $ 20.00
Dr. James R. Willis .............. 12.00
Seventh Ward Hospital (6/5/81) ... 135.00
Louisiana Medicine and Rehabilitation
Assn............................... 220.00
Diliberti Radiology Group.......... 231.00
Dr. Stuart and Williams ........... 326.00
Dr. Evan Park Howell ............... 79.00
 __________
TOTAL $ 1,023.00

We, therefore, reduce the award of past medical expenses to $14,569.22. Appellants further object to the inclusion in this award of several items obtained from a letter written by Dr. W. Curtis Wilcox that was filed with his deposition concerning Riggio. Appellants contend the letter was improperly attached to the deposition and is inadmissible. However, it was indicated without opposition during the deposition that Dr. Wilcox intended to attach various reports and data to his deposition. His letter, which outlines a rehabilitation program and past costs, certainly falls within this understanding and was properly attached and filed. Appellants also argue that the deposition itself is inadmissible, because it was filed after January 31, 1981, the date set by the trial judge for submission of the case. However, counsel for the appellants was present at Dr. Wilcox's deposition, taken on September 18, 1981, and no such objection was made at that time. This contention, made for the first time in this court, comes too late as the appellants acquiesced in the taking and filing of the deposition after the submission date.
The award for future medical expenses is supported by the record; specifically in the aforementioned letter of Dr. Wilcox wherein he outlines the cost of future rehabilitation for Riggio. The necessity and validity of this rehabilitation is established below.
A determination of the excessiveness, vel non, of the general damage award necessarily involves a discussion of Riggio's uncommon injury and resulting problems. Riggio was sitting in the cab of the Asplundh truck when it struck the McCarroll vehicle. Upon impact, Riggio slammed his left shoulder into the dash while in an awkward, twisted position. Following the accident, he developed a redness in his left hand and arm, accompanied by cold and dry skin. Additionally, Riggio suffered pain in the left *886 arm and shoulder, with associated numbness. Later, the dilation of his left eye was affected.
Riggio underwent extensive medical treatment, beginning with Dr. Gideon, who could only provide temporary pain relief via vertebral adjustments. Riggio next saw Dr. Blitz, who suspected an injury to the sympathetic or autonomous nervous system in Riggio's left side. This diagnosis was confirmed by subsequent examinations and tests performed by Dr. Evan Park Howell, a neurologist; Dr. C. Edward Foti, vascular surgeon; Dr. George Burch and Dr. W. Curtis Wilcox, internist.
A sympathetic nerve disfunction, from which Riggio suffers, is the inability of the autonomous nervous system to regulate the size of an individual's blood vessels, and as a result, blood flow is irregular. The redness of Riggio's hand is an example of the condition. Pain is also common, as exemplified by Riggio's suffering. According to Dr. Wilcox, Riggio's present treating physician, a proper diet can control the condition somewhat, but usually a sympathectomy is required. This surgical procedure removes the disfunctioning nerves, but is risky because of the danger of blood clots. In Dr. Wilcox's opinion, Riggio will probably have to undergo a sympathectomy, from which a six-month recovery period is normal. Viewing this evidence and the entire record, we find that the trial court did not abuse its discretion in its award of general damages.
Finally, concerning the award for lost wages, the painful effects of Riggio's injury, as discussed above, have limited his physical activities since the accident. His injury led to the selling of his service station and wrecker service, and has made it difficult for him to find work he can perform without discomfort. Subsequent attempts to work for a finance agency and engage in truck farming have proved unsuccessful. We, therefore, find that the award for lost wages is also not an abuse of the trial court's great discretion.

DECREE
Accordingly, for the above expressed reasons, the awards of $25,000.00 to Wendell McCarroll and $15,000.00 to Bonnie McCarroll are affirmed. The award of past medical expenses to Felix A. Riggio, III, is reduced to $14,569.22, but the other awards of lost wages ($15,000.00), future medical expenses ($25,000.00) and general damages ($150,000.00) are affirmed. Costs of this appeal are assessed against defendant.
AMENDED AND AFFIRMED.

ON APPLICATION FOR REHEARING.
PER CURIAM.
Defendant-appellant requests a rehearing in this case based on the following allegations:
(1) Felix A. Riggio, III, plaintiff, assumed the risk of being injured;
(2) Felix A. Riggio, III, improperly amended his petition; and
(3) The awards to plaintiff were unjustified.
As for defendant's contention that Riggio assumed the risk of being injured, it must be pointed out that this allegation was absent from defendant's specification of error on appeal. Under Rule 1-3 of the Uniform Rules of the Courts of Appeal, we only review issues that were submitted to the trial court and contained in the specification of error, unless the interest of justice clearly requires otherwise. In this case, the interest of justice does not so require. Therefore, this contention will not be addressed.
Defendant further alleges that the post-trial amendment to Riggio's petition, which increased plaintiff's prayer from $90,000.00 to $700,000.00, was improper and prejudicial. But assuming, arguendo, that the amendment was improper and plaintiff's prayer should only be for $90,000.00, the trial court is not limited by the amount demanded in plaintiff's petition. Harrison v. State, Dept. of Highways, 375 So.2d 169 (La.App. 2nd Cir.1979); Wexler v. Martin, 367 So.2d 111 (La.App. 4th Cir.), cert. denied, *887 369 So.2d 1352 (La.1979); Huval v. Burke, 160 So.2d 810 (La.App. 3rd Cir.1964).
Defendant, however, has failed to show the amendment was improper. His contention that the exception of No Cause of Action to the amendment was ignored is specious, as the trial court denied his exception by signed judgment on March 10, 1982, for failure to present supporting arguments. (See page 102, Trial Record.) In sum, the defendant has not been prejudiced by plaintiff's amending petition.
Defendant's final contention that the awards to plaintiffs are unjustified is likewise groundless, as these amounts are proper under the guidelines of Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977) and Reck v. Stevens, 373 So.2d 498 (La.1979).
Accordingly, for the above-expressed reasons, defendant's application for rehearing is denied.
REHEARING DENIED.
NOTES
[1] Although Wendell testified that he missed some overtime work because of the accident, no average weekly amount was given. We, therefore, conservatively estimate that he missed approximately 12 hours of overtime a week.