CIACCIO, Judge.
This case arises from a dispute over the classification of certain real and personal property in the estate of Jennie Chianelli Godefroy. The matter was heard before a commissioner and in accordance with his recommendations judgment was rendered by the district court. The husband of the deceased, Westley Godefroy, appeals from that portion of the judgment which held Jennie Chianelli Godefroy was the owner of a one-third interest in the real property located at 601 N. Carrollton in New Orleans, which interest formed part of her separate estate. We affirm the district court judgment.
The primary issue presented on appeal is whether the trial court erred when it found that Jennie Chianelli Godefroy was “an undivided one-third fractional interest owner in the property 601 N. Carrollton Avenue, as forced heir of her mother.”
The facts are as follows:
Jennie Chianelli was married and divorced several times. At the time of her accidental death she was married to Westley Godefroy. This was her second marriage to Mr. Godefroy. The first marriage, which occurred in approximately 1940 ended in annulment in 1941. The second marriage to Westley Godefroy, although marked with numerous physical separations and incom-pleted suits for separation, lasted from 1950 until 1978, when Mrs. Godefroy died.
Jennie Chianelli Godefroy possessed personal effects and certain real property at the time of her death. In addition to being a record owner to homes and lots on Canal Street and North Alexander Street, Mrs. Godefroy had two unrecorded counterlet-ters in her favor on a piece of real property located at 601 North Carrollton Avenue in New Orleans.
The property at 601 North Carrollton Avenue was acquired on September 15, 1952 by Mrs. Godefroy’s sister and brother-in-law, Clifford and Elizabeth King, from the Homestead Savings Association for $14,000. A counterletter was executed by the record owners in favor of the deceased on September 19, 1952. The counterletter was not recorded. On May 12, 1953 the property was transferred, by act of sale and assumption, to Antonia Chianelli for $22,500 of which $16,527.96 was represented by a mortgage note. A counterletter was executed by the record owner in favor of the deceased on May 12, 1953. The counterlet-ter was not recorded. On August 19, 1955, the property was refinanced by Mrs. Chia-nelli, with French Market Homestead for $19,950. The property was again refinanced on March 1, 1961, by Antonia Chia-nelli, with French Market Homestead for $24,000. At the time of her death in 1962, Antonia Chianelli was the record owner of the property located at 601 North Carroll-ton Avenue.
The facts surrounding the acquisition and ownership of the North Carrollton Avenue property are in dispute.
The husband of the deceased, Westley Godefroy, contends that he has a community interest in the property. He testified that in 1936 he married Jennie Chianelli for *552 the first time. He allowed her to get an annulment when he found out that she was still legally married to another man. The parties again married in 1950. They lived with Jennie’s mother, Antonia Chianelli, in Mrs. Chianelli’s house on Barracks Street. This property contained rental apartments. Jennie Godefroy received part of the income from this property and, according to her husband, she commingled this money with his money. The balance of the rental money went to Mrs. Chianelli. Mrs. Gode-froy purchased her family’s interest in the Barracks property for $6,000. Mrs. Gode-froy received money from a fire casualty at this location prior to her sale of the house.
According to Mr. Godefroy, his late wife had no money of her own. He testified that although she worked as a barmaid, received rental income and some insurance monies from the Barracks Street property, he was her basic source of income. He stated that he gave her his police paycheck and she also got $2,100 of his money which she kept.
He further testified that he and his late wife bought the North Carrollton Avenue real estate with their money and with monies his wife obtained from the fire at the Barracks Street house. He stated that he did not sign the act of sale on this property because that is the way his wife wanted it. He did, however, sign the acts of sale on the properties on Canal Street, North Alexander Street and Barracks Street.
Mr. Godefroy stated that he never considered the Carrollton Avenue property as belonging to Mrs. Chianelli. He testified that Mrs. Chianelli had no income. He acknowledged that she did receive $3,000 for her share of the Barracks Street property and some of the rental income from that property. According to Mr. Godefroy, his mother-in-law lived with him and his wife principally on North Alexander, but also at the North Carrollton Avenue house. She was living with them on North Alexander Street when she died.
Westley Godefroy testified that he did not know, at the time of purchase, that the North Carrollton Avenue property was being placed in the names of Mr. and Mrs. Clifford King. He admitted, however, that he and his wife allowed the Kings to live at that location rent free. He testified that the rental income derived from the apartments located in this house was collected by him and Jennie. He stated that he paid the taxes on the property and the house note, but that the mortgage book, which evidenced his payments, had apparently been stolen. He could not recall whether he paid the insurance on this house, but he did recall cancelling the insurance after his wife’s death.
Mr. Godefroy testified that he lived at 601 N. Carrollton Avenue until the Kings put him out. He stated that at this time he told his wife that he would not return to live in this house until the title was taken out of the King’s names. He said that the change of title was accomplished by placing the property in Mrs. Chianelli’s name, with a counterletter to his wife. Once this was accomplished, he returned to live at 601 North Carrollton Avenue and was living there three weeks before his wife died. Upon her death, Mr. Godefroy was locked out of the house by his wife’s relatives.
Mr. Godefroy stated that the Carrollton property was placed in the Kings’ names in order to “whip'them in line.” He said that his wife did not take the property in her name because it would “keep people off her back.”
The time when Mr. Godefroy discovered the existence of the counterletters is uncertain. He first stated that he was informed about the counterletters three months before his wife died. He later stated that he had been shown the counterletters after they were executed and was told by his wife that if he did anything wrong she would use them, such that she and her mother would be in the house and he would be out. At another instance Mr. Godefroy stated that he saw the first counterletter in 1953, after the act of sale, and the second counterletter when Jennie’s family came over after her death. He stated that he was not asked to sign nor record either counterletter, but that he would not have *553 executed them because he felt that by doing so he would be signing his rights away. Moreover, he said that he did not need to sign the counterletters because the property involved was community property. Elizabeth LaDiana (formerly King), the sister of the deceased, contends that the North Car-rollton Avenue property belonged to her mother or to her deceased sister’s separate estate.
Mrs. LaDiana testified that she and her former husband, Clifford King, owned a house on Bartholomew Street prior to their purchase of the house on North Carrollton Avenue. She stated that the Bartholomew property was sold and 601 North Carollton was purchased by the couple and Mrs. Antonia Chianelli.
Mrs. Chianelli, who did not speak, read nor write English, depended upon her daughter, Jennie Godefroy, to handle her affairs. Mrs. Chianelli and her late husband had owned a house on Barracks Street. The house was damaged by fire and Mrs. Chianelli and her daughter, Jennie Godefroy, received insurance money and used some of it to repair the house. The property on Barracks Street contained rental units which provided an income for Jennie and her mother. In addition to the revenue from the rental and sale of the Barracks Street property, Mrs. Chianelli received money from insurance policies which were held by her late husband.
According to Mrs. LaDiana, Jennie Gode-froy was not supported by her husband. Rather, Mrs. Godefroy received money from the rentals on Barracks Street property, and later, from the rental units at 601 North Carrollton Avenue. She also received money from her mother, Mrs. Chia-nelli.
Elizabeth testified that she and her husband, Clifford King, and her mother purchased the property at 601 N. Carrollton Avenue. According to Mrs. LaDiana, her mother could not purchase the property alone because she was a widow and the lending institution, was not aware that she had money.
The house which contained seven rental units, was also occupied by Mr. & Mrs. King, their two sons, Mrs. Chianelli and Jennie Godefroy. According to Mrs. LaDia-na, her mother never lived at North Alexander as Mr. Godefroy claimed. She only visited that location when she would go there to retrieve her daughter. Jennie Go-defroy lived at 601 North Carrollton on an intermittent basis and she was living there at the time of her death, because she was again physically separated from her husband. Mr. Godefroy never resided at this location, rather, he lived in one of three apartments at the North Alexander residence. Mrs. LaDiana stated that Mr. Gode-froy never slept at the house on North Carrollton, nor did he have clothes there. He merely visited at North Carrollton and sometimes cut the grass. He did not make the house payments nor collect the rent payments from this property.
Jennie Godefroy collected the rent from the property to pay the house note. She would often secure checks from Mrs. LaDia-na to insure payment of the note. Mrs. LaDiana and her former husband, Clifford King, each worked and hence Mrs. LaDiana provided additional money, when needed, to pay the house note.
In 1955 or 1956 Mr. and Mrs. King sold their interest in this property to Mrs. Chia-nelli. Although the witness first testified that no money was exchanged for this transfer, she later testified that she and her husband were given $5,000-$6,000 by Mrs. Chianelli for their interest in the property. She further stated that the funds were used to purchase a residence on Milne Street in New Orleans.
Mrs. LaDiana’s testimony regarding the counterletters is in conflict. She admitted she was unaware of a counterletter by her mother in favor of her sister at the time of this transaction, and she said that the property was placed in her mother’s name in case anything happened to Mr. and Mrs. King that their children would be cared for by her mother. At trial, Mrs. LaDiana testified that she did not know what she was signing when she executed the counterlet- *554 ter but she further stated that the counter-letter was executed to protect her sister who was fighting with her husband and who had no source of income except the rental income. She also testified that the reason for the counterletter was because her sister was going to manage this property and live there with her mother.
Clifford King, Mrs. LaDiana’s former husband, testified that he and his wife lived on Bartholemew Street with their two sons until that property was sold. The King couple and Mrs. Chianelli each put up one-half the downpayment for the North Car-rollton Avenue property. They lived there for five years until they sold their interest in the property to Mrs. Chianelli for $5,000 or $6,000. In addition to the King family, the Carrollton residence was occupied by Mrs. Chianelli and by Jennie Godefroy who lived their during several periods of time, while physically separated from her husband. Mr. King testified that Jennie Gode-froy always took care of her mother’s affairs as her mother was unable to read, write, and speak English. He stated that he sold his interest in the property in order to make Mrs. Chianelli secure. With regard to the counterletter, Mr. King stated that he did not read it but merely signed it because he understood that it would benefit Mrs. Chianelli.
The commissioner based on this testimony, made the following findings:
With respect to the property 601 North Carrollton Avenue, the inventory should reflect that decedent had an undivided one-third interest therein as forced heir of her mother, the owner of the property. The record shows that this property was purchased by Elizabeth and Clifford King on September 15, 1952. And although they signed a counterletter four days after their acquisition, in favor of the decedent, from a factual standpoint this coun-terletter proved to be meaningless and was ignored when, on May 12,1953 Elizabeth and Clifford King sold the property to Mrs. Antonia Caporciscio Chianelli, who was the mother of Elizabeth and Jennie, the decedent. Mrs. Chianelli, who could not write, made her mark on a counterletter in favor of decedent some. six days after her acquisition.
Again, consistent with past practice, the counterletter was completely ignored and again proved to be meaningless since on two occasions thereafter there were sales and resales of the property by the mother, the latest taking place on February 28, 1961. And following that sale and resale, the mother did not execute another counterletter in favor of anyone. When she died in 1962 she was still the registered owner of the property 601 North Carrollton Avenue. She left surviving her three children, Joseph, Elizabeth, and the decedent, Jennie, who was also known as Rita. When Jennie died on October 30, 1978 she was an undivided one-third fractional interest owner in the property 601 North Carrollton Avenue, as forced heir of her mother, whose succession had not been opened. The inventory in Jennie’s succession should have reflected that the one-third interest in said property belonged to her separate estate. Attempts to show otherwise by parole cannot serve to contradict the written evidence, affecting this real estate. The counterletters offered in evidence were merely subterfuges, concocted to control the property of the mother, a scheme which was abandoned in 1961.
The appellant argues that there was no evidence produced at trial to substantiate the claim that 601 North Carrollton was bought and paid for by Mrs. Chianelli.
The findings of the trial court are entitled to great weight. Butts v. Insurance Co. of N. America, 352 So.2d 745 (La. App., 3rd Cir., 1978); McCastle v. Tri-G Marine Supply Co., 351 So.2d 782 (La.App., 1st Cir., 1977). Where there is a conflict in testimony, reasonable evaluation of credibility and inferences of fact should not be disturbed on appeal. McCastle v. Tri-G Marine Supplies Co., supra; Martin v. Feiber, 357 So.2d 5 (La.App., 1st Cir., 1977). Likewise, the appeals court should not substitute its opinion for that of the trial court on issues of credibility. Butts v. Insurance Co. *555 of N. America, supra; Martin v. Feiber, supra.
The standard for appellate review is set forth by the Louisiana Supreme Court in Arceneaux v. Domingue:
As an aid to the exercise of the appellate function of review of facts in civil cases, we attempted to explain, in Canter v. Koehring, supra, without great detail, the appropriate standard. We said that “even though the appellate court may feel that its own evaluations and inferences are as reasonable,” it should not disturb reasonable findings of the trial court when there is conflict in the testimony. We prefaced this observation: “When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error.” 283 So.2d 716, 724. (Emphasis added).
We did not foresee that this explanation would be misunderstood to mean that: “There is no manifest error when the evidence before the trier of fact furnishes a reasonable basis for its finding.” We said the appellate court should not disturb this factual finding in the absence of manifest error. The difference is important. “Manifestly erroneous,” in its simplest terms, means “clearly wrong.” 365 So.2d 1330 at 1333 (La., 1979) citing Canter v. Koehring, 283 So.2d 716 (La., 1973).
Our review of the record convinces us that there was ample evidence to find that Mrs. Chianelli purchased the property located at 601 North Carrollton Avenue.
Elizabeth LaDiana and her former husband, Clifford King, each testified that Mrs. Chianelli purchased the property and bought out their one-half interest after the initial purchase. Antonia Chianelli was the record owner of the property at the time of her death and at the death of her daughter, Jennie Godefroy. All the parties to the litigation attested to the fact that Mrs. Chianelli had various income sources. Mrs. Chianelli resided at the house during the last ten years of her life. Her rents were collected and the house note was paid through her daughter who acted as her agent. She acted in disregard of the coun-terletters in purchasing the King’s interest in this property and in twice refinancing the property.
Obviously there is a conflict in the testimony as between the witnesses and contradictions within their testimony. However, the trial judge was in the best position to hear the witnesses and evaluate their credibility. We are satisfied that the trial judge’s findings regarding the ownership of this real property are not clearly wrong.
Appellant next argues that Elizabeth La-Diana is estopped from claiming that Mrs. Chianelli, and not Mr. and Mrs. Godefroy, owned the Carrollton Avenue property. In support of this position he points to Mrs. LaDiana’s alleged judicial admission and counterletter which was in authentic form.
The trial judge apparently found the equitable principle of estoppel to be inapplicable and he allowed the parol evidence to explain the conflicting authentic documents. The trial judge acted within his discretion and in accord with Civil Code Article 2239 in admitting the testimony. We find no error in this regard.
Lastly, appellant argues that an un-rebutted presumption exists that the Car-rollton Avenue property is community property, claiming it was acquired during the marriage of Jennie and Westley Godefroy by virtue of the counterletter.
The trial court found that the counterlet-ters were “meaningless” and “subterfuges, concocted to control the property of the mother, a scheme which was abandoned in 1961.” We concur in this finding. Accordingly, the property was owned by Mrs. Chianelli and inherited by her daughter who was a forced heir. Since inherited property falls in the separate estate of decedent, there is no need to address the appellant’s argument dealing with the presumption that the property is community.
*556 For the reasons assigned, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.