466 So.2d 736 (1985)
Jacqueline Snell TAYLOR
v.
CHARITY HOSPITAL OF LOUISIANA IN NEW ORLEANS.
No. CA-2209.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1985.
*737 Paul J. Galuszka, New Orleans, for appellee.
Ivor A. Trapolin, L. Kevin Coleman, New Orleans, for appellant.
Before GULOTTA, CIACCIO and BYRNES, JJ.
BYRNES, Judge.
This appeal arises out of a judgment of the Civil District Court for Orleans Parish awarding appellees damages for the premature death of their daughter.

FACTS
On June 22, 1976, six year old Leslie Ann Snell was admitted to Charity Hospital complaining of severe headaches. An examination revealed that she was suffering from a brain tumor. On June 25, surgery was performed to remove the tumor. By June 27, Leslie had slipped into a semi-comatose state and additional surgery was performed. During this second operation, it was necessary to remove a significant portion of her brain. Leslie remained semicomatose until she died on September 21, 1976.
On the morning of her death at approximately 1:00 a.m., a nurse noted that Leslie was bleeding from the vaginal area. When the bleeding had not stopped by 2:30 a.m., a doctor examined her and found a laceration in the vaginal area, which he packed because the natural clotting process had not stopped the bleeding. Later that morning it was noted that the laceration was "oozing", rather than "bleeding". The packing was replaced and it was determined that the laceration was approximately one centimeter long. Although Leslie's *738 condition appeared to have stabilized, she died that day at 12:50 p.m., approximately twelve hours after her bleeding was first noted.
Leslie's mother, Mrs. Taylor, was notified by phone that her daughter had died. Later her sister told her of an article in the Times-Picayune, reporting the death of a comatose child at Charity Hospital who may have been sexually molested just before she died. Mrs. Taylor subsequently discovered that the girl referred to in the article was her daughter.
Although an autopsy report revealed no sexual molestation, and classified the death as "natural", Mrs. Taylor and her ex-husband filed this suit against Charity Hospital for the premature death of their child. The matter was tried before a judge and taken under advisement. Six months later, judgment was rendered, awarding plaintiffs $50,000.00 ($25,000.00 per parent), for the pain & suffering of their child, subject to an offset of $8,180.80 in medical expenses owed to Charity Hospital. The Court also awarded Mrs. Taylor an additional $25,000.00 for her loss of Leslie's love and affection.

NEGLIGENCE OF CHARITY HOSPITAL
The trial court, after hearing the evidence, reached the following conclusion concerning the hospital's care of the child:
The fault of the hospital however lies in their failure to properly attend to Leslie Ann Snell after the vaginal bleeding was discovered. The child's debilitated state caused the blood loss to have a more detrimental effect upon her health and life span that it would, had she been an otherwise healthy child.
The Court believes that the negligence of Charity Hospital in its failure to adequately control the bleeding and its failure to transfuse Leslie Ann Snell contributed to and hastened the otherwise certain death of the child.
Appellant contends that this finding was erroneous in light of the evidence presented at trial. We do not agree.
The court heard the testimony of experts for both sides. Plaintiff's expert testified solely on the basis of Leslie's medical records. He focused on hematocrit readings, which indicate the volume of blood relative to total fluid volume in the body. His conclusion was that the child sustained a twenty-percent drop in blood volume as a result of the vaginal laceration, and that in his opinion, this acute blood loss was the final cause of death. He also testified that a transfusion should have been ordered when the child's blood loss became apparent.
Appellant called several experts to testify, including the doctors who treated Leslie after the bleeding was reported. They testified that a uterine pack was placed on the laceration approximately 1½ hours after the bleeding was discovered. The record supports a finding that there was substantial bleeding both before and after the pack had been put in place. However, appellant's experts did not feel that excessive bleeding was the cause of death. They attributed the low hematocrit readings to a combination of kidney failure and pneumonia which caused an increase in the amount of fluids retained by the body. They reasoned that these circumstances led to a low hematocrit reading because the volume of blood appeared low in relation to the increased amount of other fluids Leslie's body was retaining.
While this appears to be a plausible explanation for the low readings, it did not convince the trial judge, who gave more weight to the testimony of the plaintiff's expert. Such a conclusion should not be disturbed on appeal in the absence of manifest error. Schackai v. Tenneco Oil Co., 436 So.2d 729 (La.App. 4th Cir.1983) writ denied 440 So.2d 759 (La.1983); Succession of Godefroy, 428 So.2d 550 (La.App. 4th Cir.1983).
We have carefully reviewed the record, and find no manifest error in the trial court's determination that Charity Hospital's treatment of the laceration was negligent. The record supports the trial *739 judge's conclusion that Leslie should have been transfused, given her generally debilitated condition and the amount of blood she had lost.

PAIN AND SUFFERING
Appellant next contends that the award of $50,000.00 for the child's pain and suffering was manifestly erroneous. The thrust of this argument is that, in her semi-comatose state, Leslie could not feel pain and did not suffer.
If it is shown that a person is most probably unconscious when he suffers a fatal injury, the survivors are not entitled to recover for the decedent's pain and suffering. See: Daniels v. Conn, 382 So.2d 945 (La.1980) and Harrell v. Empire Fire and Marine Insurance Co., 449 So.2d 1177 (La.App.2d Cir.1984).
In Harrell, supra, the burden of proof in such a case was stated in this way:
Plaintiffs had the burden of proving by a preponderance of the evidence that the decedent was conscious following the impact and before he drowned. See Chausse v. Southland Corp., 400 So.2d 1199 (La.App. 1st Cir., 1981), writ den., and McDaniel v. Welsh, 234 So.2d 833 (La.App. 1st Cir.1970), writ ref. 449 So.2d at 1179.
When that burden is not met, damages for a decedent's pain and suffering should not be awarded.
The present case presents the somewhat unusual situation of a semi-comatose decedent suffering injury. Experts for both plaintiff and defendant agreed that this was Leslie's condition during the period leading to her death. The record shows that she responded to some external stimuli by involuntary muscle movements. The experts were divided as to whether these responses were an indication that Leslie could feel as well as react. Taking these factors into account the trial court found:
It would be impossible to determine with certainty whether or not Leslie Ann Snell suffered any pain as a result of the lacerations and bleeding. The testimony was that although comatose, she may have suffered some pain or sensation of pain. She was unable to express herself in that regard. The Court feels that she did, in fact, sustain some sensation of pain as a result of her injuries and bleeding and the Court includes its valuation of that pain and suffering in its award. (Reasons for Judgment, 2)
Given the record before us, we find that the trial court did not commit manifest error in determining that the child "sustained some sensation of pain", however, we find the amount he awarded to be excessive.
In determining the appropriateness of an award, we may look to other decisions as a guideline, See: McCarroll v. Asplundh Tree Expert Co., 427 So.2d 881 (La.App. 1st Cir.1982). However, each award must be analyzed on a case by case basis and viewed in perspective with its individual facts Alexander v. Leger, 423 So.2d 731 (La.App. 3d Cir.1982).
We have found no cases directly on point, but have examined those cited by appellees in support of the award. Although some of these cases awarded the parents of a child more than $50,000.00 for pain and suffering, none of them involved a semi-consciousness victim. The lowest award given in these cases was $50,000.00 for the death of a six year old boy. See: Thibodeaux v. State of Louisiana, 371 So.2d 1227 (La.App. 3d Cir.1979).
When lowering an award of the trial court, appellate courts are only permitted to reduce it to the highest amount which was within the discretion of the trier of fact. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). To fix the parameters of discretion in this case we have examined cases where the decedent was conscious for only a short time following a fatal injury. Given the circumstances surrounding Leslie's death, the range of reasonable awards for her pain and suffering appears to be between $5,000.00 and $15,000.00. See: Cheatham v. City of *740 New Orleans, 378 So.2d 369 (La.1979). See also Palermo v. Allstate Insurance Co., 415 So.2d 437 (La.App. 1st Cir.1982). We therefore reduce the award to a total of $15,000.00, the highest amount which we feel was within the discretion of the trier of fact to award.

LOSS OF LOVE AND AFFECTION
Appellant next contends that the award of $25,000.00 for loss of love and affection was erroneous. First, they argue that the trial court erred in finding the hospital negligent in its treatment of the laceration. Alternatively they argue that since Leslie was terminally ill and semi-comatose before the laceration occurred, the actual loss of love and affection occurred when Leslie originally slipped into a semi-comatose state after surgery, at a time when no negligence by the hospital was alleged or proven. Having already declined to disturb the trial court's findings regarding the negligence of the hospital, we only address appellant's alternative argument.
The appropriateness of an award for loss of love and affection and its amount are to be determined on a case by case basis. There is no strict standard for making this determination and the award will hinge upon the relationship between the child and its parent(s) before death. See Guidry v. Missouri Pacific Railroad Co., 366 So.2d 618, 619 (La.App. 3d Cir. 1978); Weathersby v. Kersbergen, 356 So.2d 498 (La.App. 1st Cir.1977); Gonzales v. Xerox Corp., 329 So.2d 818 (La.App. 1st Cir.1976).
Mrs. Taylor, and her sister testified regarding the close relationship between Mrs. Taylor and her daughter. The record reflects that from the time the child was first brought to the hospital until after the second surgery was performed, Mrs. Taylor spent several nights at the hospital in order to be with her daughter. When Leslie went into a semi-coma, Mrs. Taylor visited her faithfully, twice a week, until the child's death.
Appellant places great emphasis on the fact that Leslie was semi conscious and terminally ill for some time prior to the bleeding which prematurely shortened her life. However, we are not prepared to state that the bond between parent and child is broken when the child becomes terminally ill and lapses into a semi-comatose state. Feelings of love and affection transcend the ability to overtly express them. Mrs. Taylor clearly gained some sense of closeness and communication with Leslie by her visits, even if the child was semi-conscious. That sense of love between them was not "lost" until Leslie finally died.
There is no evidence indicating exactly how long Leslie might have lived had she not bled so heavily from the laceration. However, the record does support a finding that the bleeding hastened her death and that as a consequence, Mrs. Taylor was prematurely deprived of the love and affection of her daughter. We see no abuse of discretion in the amount awarded for this loss.

PUNITIVE DAMAGES
Appellees have raised several substantive issues in their brief to this court. These issues were not raised by appellant and the appellee did not answer the appeal. We therefore will not consider them. See C.C.P. Art. 2133.

CONCLUSION
For the foregoing reasons, the award for pain and suffering is reduced to fifteen thousand ($15,000.00) dollars, ($7,500.00 for each parent), subject to Charity Hospital's claim for eight thousand one hundred and eighty ($8,180.00) dollars.
In all other respects the judgment of the trial court is affirmed.
Costs are to be borne equally by both parties.
AMENDED AND AFFIRMED.