474 So.2d 1358 (1985)
James Michael MALMAY, Individually and as Tutor of the Minor, Crystal Francine Malmay, Plaintiff-Appellant,
v.
Billy E. SIZEMORE, et al., Defendants-Appellees.
No. 17140-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
Writ Granted November 8, 1985.
*1360 Booth, Lockard, Politz, Lesage & D'Anna by John R. D'Anna, Shreveport, for plaintiff-appellant, James Michael Malmay.
Rountree, Cox & Guin by Gordon E. Rountree, Shreveport, for defendant-appellee-appellant, Billy E. Sizemore.
Bodenheimer, Jones, Klotz & Simmons by G.M. Bodenheimer, Mary L. Coon, Shreveport, for defendant-appellee, United Services Auto. Ass.
Before HALL, SEXTON and NORRIS, JJ.
SEXTON, Judge.
This action arose as the result of a one car accident which caused the death of Deborah Wilkins Malmay, a passenger in the vehicle. Her husband, James Michael Malmay, instituted suit individually and as tutor for their minor child, Crystal Francine Malmay, for Deborah's wrongful death. Named as defendants were Billy Sizemore, driver of the vehicle; Beverly Jean Heggen, owner of the vehicle; her son, Craig, who allegedly loaned the car to Sizemore; the insurer of the vehicle, United Services Automobile Association Casualty Insurance (USAA); the State of Louisiana, Department of Transportation and Development (DOTD); and American Liberty Insurance Company, liability insurers of Billy Sizemore's sister and brother-in-law, with whom he resided at the time of the accident. Prior to trial, defendants Beverly Heggen and Craig Heggen were dismissed as a result of a ruling on an exception. American Liberty Insurance Company was dismissed from the suit voluntarily by the plaintiff. At the conclusion of plaintiff's evidence at trial, DOTD was also dismissed.
After the trial, the trial court rejected plaintiff's demands against USAA finding that Sizemore's use of the vehicle was not covered under the omnibus clause of Beverly Heggen's insurance policy. However, the trial court found Sizemore to be negligent in causing Mrs. Malmay's death and awarded judgment against him for $20,000 in favor of plaintiff individually, and $50,000 in favor of plaintiff in his capacity as tutor of his minor daughter. From this judgment, plaintiff and defendant Sizemore appeal. We affirm.
The incident giving rise to this litigation occurred on October 2, 1981 on U.S. Highway 71 in rural Bossier Parish, Louisiana. On the night immediately preceding the accident, Deborah Malmay and her sister, Denise Wilkins, went to Shreve Square, a night club district in Shreveport. When Denise decided to go home, Deborah was not yet ready to leave, and told Denise that she would stay and ride home later with a friend. Thereafter, Denise and her boyfriend left Shreve Square.
Later that evening, Deborah met Billy Sizemore and asked him for a ride home. Sizemore drove a 1978 Chevrolet Luv pickup truck belonging to Beverly Heggen and obtained by Sizemore from her son, Craig Heggen, who had driven it to Shreve Square. As the vehicle proceeded down U.S. Highway 71, Billy Sizemore lost control of the vehicle, ran off the road and struck a culvert, causing serious injuries to Mrs. Malmay which eventually resulted in her death.
At the time of the collision, Billy Sizemore was uninsured. The Luv pickup truck was one of three vehicles insured under a policy of liability insurance issued by defendant USAA. The policy written by USAA included an omnibus clause extending liability coverage to the named insured, any resident of the insured's household, and any other person using the automobile with the permission of the named insured, provided that the actual operation or use is within the scope of such permission. Beverly Heggen was designated as the named insured under the policy and she and Craig Heggen were designated on the policy as operators for all three vehicles. At the time of the accident Craig was temporarily staying with his mother while he moved to another home. It is not seriously contended that he was a member of his mother's household.

OMNIBUS COVERAGE
At trial plaintiff asserted that Sizemore's use of the vehicle triggered coverage under *1361 the omnibus clause of Beverly Heggen's insurance policy because he had been given permission to drive the truck by a designated operator, Craig Heggen.
The trial court concluded that the evidence clearly established that Craig Heggen gave Billy Sizemore permission to use the vehicle. However, the court also found that the evidence showed that Craig's permission from his mother to use the truck was limited for a specific purpose, i.e., moving his belongings from one apartment to another, and that he did not have permission to use it for the purpose for which it was used. Therefore, the trial court found that since the first permittee's use of the vehicle was restricted, the second permittee use was not covered under the omnibus provision of the insurance policy.
On appeal, plaintiff-appellant reiterates his trial contention against USAA that Craig Heggen had the authority to use and loan the subject vehicle independent of Beverly Heggen's permission, by virtue of his appearance on the policy as a designated operator. Plaintiff argues that the clear meaning of the term is such that each person designated as an operator on the policy was intended to use any and all of the insured automobiles without qualification. Plaintiff also argues that the term "designated operator" is not defined in the policy; therefore, the policy is ambiguous and should be construed against its author, the insurance company. Due to the lack of this definition, appellant submits that there is no basis for differentiation between a designated operator and a named insured for purposes of finding omnibus coverage. We disagree.
The policy is clear and unambiguous as to the extent of coverage afforded. Those covered under its terms are the named insured, Beverly Heggen, members of her household, or persons operating the vehicle within the scope of the permission given by the named insured. Therefore, her son Craig clearly had to have her permission to drive the vehicle in order for his operation of that vehicle to be covered under this policy of insurance. Although designated operator is not defined in the policy, we have little difficulty in concluding that Craig Heggen's designation as such on the policy did not give him the unrestricted right of use of Mrs. Heggen's vehicle.
In Coco v. State Farm Mutual Automobile Insurance Co., 136 So.2d 288 (La. App.3d Cir.1962), our brethren of the Third Circuit made an exhaustive review of the jurisprudence pertinent to the pivotal question in this appeal, i.e., whether or not Billy Sizemore's use of the truck as a second permittee was covered under the omnibus clause of Beverly Heggen's policy.
We think the jurisprudence of this State has been established to the effect that where the original permittee has been granted more or less general discretion and continuous control over the insured vehicle by the named insured, such general permission carries with it the implied consent of the named insured for the original permittee to allow third persons to use the insured vehicle. Under those circumstances, a third person using the vehicle with the permission of the original permittee is considered as having the indirect and implied permission of the named insured to use the car, and thus becomes an insured under the provisions of the omnibus clause. Perrodin v. Thibodeaux, La.App. 1 Cir., 191 So. 148; Boudreaux v. Cagle Motors, La. App. 1 Cir., 70 So.2d 741; Garland v. Audubon Insurance Company, La.App. 1 Cir., 119 So.2d 530 (Cert. denied); Thomas v. Peerless Insurance Company La.App. 2 Cir., 121 So.2d 593; Donovan v. Standard Oil Company of Louisiana, La.App. 2 Cir., 197 So. 320 (Cert., denied).
In a case, however, where the original permittee has been granted the more or less general use of and continuous control over the insured vehicle by the named insured, but with the specific restriction or prohibition that he is not to permit anyone else to drive it, then we think the general permission granted to the original permittee does not carry with it the implied consent of the named *1362 insured that others may be permitted to drive the insured car.
* * * * * *
We can readily conceive of circumstances where the permission of the named insured for a second permittee to use the automobile may be implied, even though the named insured has specifically prohibited the initial permittee from letting someone else drive. Such permission may be implied, for instance, if the named insured has knowledge of the fact that the original permittee has permitted others to use the automobile in spite of that prohibition, and after acquiring that knowledge he makes no protest and takes no action to prevent him from continuing to do so. In such cases, however, the actions of the named insured must be of such a nature that his permission may implied in spite of the fact that he specifically prohibited the use of the vehicle by a third person.
The question of whether a second permittee had implied permission to use the vehicle is a matter of fact to be determined in light of the circumstances of each case. American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969).
In Coco, supra, the court held that the insured had given his son, the original permittee, specific, frequently repeated instructions that no one else was to be permitted to use the family cars. Therefore, the person who had borrowed the car from the insured's son did not fall under the umbrella of the omnibus clause of the policy. Likewise, in DiLeo v. White, 391 So.2d 1374 (La.App. 4th Cir.1981), writ denied, 396 So.2d 1352 (La.1981), an original permittee who had lent out the family car to a second permittee in derogation of specific instructions from his parents that he could not do so without specific permission from them was held not to be an omnibus insured. In so holding, the court noted that the original permittee had not been given exclusive dominion over the car.
In Building Specialties v. State Farm Mutual Automobile Insurance Co., 440 So.2d 984 (La.App. 3d Cir.1983), the court noted that the particular facts of that case fell within an exception of the general omnibus driver rule. In that case, the named insured impliedly consented to the second permittee's use, classifying the second permittee as an omnibus insured by virtue of his awareness that his son had allowed others to drive the vehicle and by virtue of the fact that he made no significant protest to these violations.
We conclude that the facts of this case indicate that Craig did not have exclusive dominion over this vehicle, but was instead given restricted permission to use the truck. Beverly Heggen testified that she allowed her son to use the truck on occasions when he obtained her permission. On the particular occasion in question, Craig had obtained her permission to use the truck in order to move his belongings from his apartment into storage. Mrs. Heggen stated that each time Craig wanted to use the truck she instructed him not to let anyone else drive the truck, and would further instruct him not to take the truck to bars. The fact that Craig Heggen was aware that he did not have exclusive dominion over the truck is emphasized by his statement that "I wasn't even going home without that truck, you know, because I wasn't even supposed to take it myself...."
Thus, the evidence establishes that the instructions given by Beverly Heggen to her son, Craig, that no one else was to be permitted to drive the truck were specific, frequently repeated and emphasized. We also conclude that Beverly Heggen did not have any knowledge of the fact that these instructions had ever been violated or that anyone other than her son had ever driven the truck when it was under his control. Therefore, we conclude that Billy Sizemore was not an omnibus insured, as the original permittee, Craig Heggen, violated specific instructions of the named insured by allowing another person to use the insured vehicle. We further find that this case does not fall within the exception to the general omnibus driver rule of implied consent to the second permittee's use because Mrs. Heggen had no inclination whatsoever that *1363 the truck was being used by anyone other than Craig.

EVIDENTIARY RULINGS
During the testimony of Trooper Robert Brown, who investigated the accident, and Mike Holloway, a mailman who discovered the accident, certain questions were asked about statements which had been made to them by the defendant, Billy Sizemore. Hearsay objections were urged by defense counsel. Certain testimony relative to the manner in which Mr. Sizemore had obtained possession of the vehicle was heard subject to the objection.
Appellant Malmay claims that this testimony was admissible under the admission made by a party defendant exception to the hearsay rule. The statements in question were made by Sizemore to the investigating officer and the mailman who came upon the accident both at the scene of the accident and later at the hospital. The statements were to the effect that Craig had given Billy permission to use the truck and to bring it back the next day. The trial court ultimately found that Craig had indeed given Billy permission to use the truck. Thus, assuming even arguendo that the trial court was in error in excluding this testimony, the court nevertheless resolved the factual issue pertinent to the testimony in favor of plaintiff. Therefore, we need not examine the character of the statements because any possible error is harmless.
An additional evidentiary claim asserted by plaintiff is that the trial court erred when it allowed counsel for USAA to cross-examine its insured, Beverly Heggen. Beverly Heggen was originally called on cross-examination by counsel for plaintiff. However, subsequent to objection from the defense, the trial court ruled that Mrs. Heggen could not be called on cross-examination by plaintiff because she was no longer a party, having been previously released on an exception.
The trial court was correct in ruling that Heggen when called by plaintiff became plaintiff's witness because she had been previously released. King v. Commercial Union Insurance Company, 425 So.2d 358 (La.App. 3d Cir.1982), writ denied, 429 So.2d 146 (La.1983). Therefore, cross-examination by opposing counsel was appropriate.
Most importantly, however, our examination of Mrs. Heggen's testimony indicates that she was independent in her responses and was not influenced by the manner of defense counsel's examination. Consequently, any possible error is harmless. See Esta v. Dover Corporation, 385 So.2d 439 (La.App. 1st Cir.1980), writ denied, 392 So.2d 690 (La.1980).

QUANTUM
Plaintiff asserts that the award to him individually is so inadequate as to represent an abuse of discretion. Specifically, appellant claims that the court erred in refusing to award an amount for loss of future services and loss of future wages. Plaintiff further asserts, as tutor of his minor child, that the award to the child is also inadequate and specifically complains of the trial court's failure to render an award for pain and suffering of the deceased subsequent to the accident and prior to death.
The appropriate law for the review of a quantum award was summarized as follows in Cutchall v. Great American Pump Company, 460 So.2d 1106, 1114-1115 (La.App.2d Cir.1984).
Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made in the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Coco v. Winston Industries, Inc., supra; Bitoun v. Landry, 302 So.2d 278 (La.1974); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Winterrowd v. Travelers Indemnity Co., 452 So.2d 269 (La.App.2d Cir. 1984); Black v. Ebasco Services, Inc., *1364 411 So.2d 1159 (La.App. 1st Cir.1982), writ denied, 414 So.2d 1253 (La.1982); Greene v. Wright, 365 So.2d 551 (La. App. 1st Cir.1978). Moreover, the appellate function in reviewing quantum is limited to raising inadequate awards to the lowest amount the trial court could have reasonably awarded, and lowering excessive awards to the highest amount the trial court could have reasonably awarded. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., supra; Winterrowd, supra; Alexander v. Leger, 423 So.2d 731 (La.App.3d Cir.1982); Greene v. Wright, supra.

The appropriate procedure for testing whether the jury abused its discretion by making an excessive award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the jury. The converse of this rule is also true: in determining whether the trier of fact abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); Wilson v. Aetna Casualty and Surety Company, [401 So.2d 500 (La.App. 2d Cir.1981)], supra. Further, we note the cautionary language of Reck v. Stevens, supra, to the effect that an appellate court must reach a determination that the trier of fact abused its discretion before a resort to prior awards is appropriate for purposes of determining what would then be an appropriate award.
In reviewing this unitemized award of $20,000 to the plaintiff individually, we note that it is not seriously disputed that plaintiff proved $4,284.64 in special damages. We therefore subtract this sum from the unitemized award in considering what is the lowest acceptable amount which the trier of fact could assess to compensate plaintiff for his loss.
At the time of her death Deborah Malmay was 20 years old. She and plaintiff had been married since May 1, 1979 and had dated for approximately eight months prior to their marriage. Their child, Crystal Francine, was born December 6, 1979. Deborah had an 11th grade education and had obtained her G.E.D. She had worked briefly selling merchandise over the telephone prior to Crystal's birth.
Loss of support has been allowed to the surviving husband in cases where the deceased wife was employed at the time of her death and was actually providing assistance in the form of financial contribution. In these cases the courts have held that the surviving husband has sustained an actual loss as a result of the lost earnings of his wife. See Foster v. Marshall, 341 So.2d 1354 (La.App.2d Cir.1977), writ denied, 343 So.2d 1067, 1077 (La.1977); Diefenderfer v. Louisiana Farm Bureau Mutual Insurance Company, 383 So.2d 1032 (La.App. 1st Cir.1980), writ granted, 384 So.2d 985 (La.1980).
The only evidence presented relating to plaintiff's claim for loss of wages was the mention of Deborah's employment as a telephone salesperson and testimony to the effect that she intended to return to work after her child was born. As for loss of services, plaintiff simply alleged that the decedent was a good wife and homemaker, and testified to that fact at trial. Based on this sparse record, any award in this regard would be entirely speculative. We therefore conclude that there was no clear error in rejecting these specific claims.
Additionally, there was considerable evidence at trial that the plaintiff and the decedent had marital difficulties. In fact, during the summer immediately preceding the accident, plaintiff filed a suit for separation against his wife, and she filed a reconventional demand also seeking a separation. The testimony was conflicting about when they physically separated and for what period of time they remained separated due to marital problems. However, they had reconciled prior to the accident although they were physically separated at the time of the accident because of plaintiff's employment. The decedent and the plaintiff had temporarily lived together in a motel in Dallas as a result of that employment, but at the time of the accident, the *1365 decedent had returned home to reside with her mother. In his reasons for judgment, the trial court considered significant that on the evening of her death, Mrs. Malmay was at Shreve Square with friends, and later met and left with Billy Sizemore, a single male. In the trial judge's view, this evidence indicated that the marriage between the parties was not the strongest of relationships.
At this juncture, we note that plaintiff made an objection at trial to defense counsel's elicitation of certain statements made by the deceased to her sister to the effect that she was unhappy in Dallas and wanted to come home. The testimony was admitted subject to the objection. This testimony was clearly hearsay, and did not fall within any of the recognized exceptions to the hearsay rule. Consequently, it should have been disallowed. See Whittington v. Sowela Technical Institute, 438 So.2d 236 (La.App.3d Cir.1983), writ denied 443 So.2d 591, 592 (La.1983). However, there is ample support within the record for the trial judge's finding that the Malmays had suffered past marital difficulties. Considering the whole of the evidence, the general damage award of $20,000 less specials to plaintiff individually, although in the low range, is within the trial judge's discretion.
We now turn to a consideration of the award to plaintiff in his capacity as tutrix of the minor child, Crystal Francine Malmay. In this capacity, plaintiff was awarded $50,000 for the wrongful death of Deborah Malmay. The record establishes that the child, Crystal, although enjoying a close relationship with her mother, was eighteen months old at the time of her mother's death and remembers her mother only through pictures. The award of $50,000 is well within the trial court's great discretion in this regard.
Appellant also claims that the trial court erred in declining to award damages for decedent's pain and suffering prior to her death.
Mike Holloway discovered the accident at 5:45 a.m. Holloway testified that Mrs. Malmay showed no signs of life at that time. Trooper Robert Brown, who arrived at the scene at approximately 6:19 a.m. testified that Mrs. Malmay was alive when she was placed in the ambulance, but was making no sound or movement. Dr. George McCormick, coroner, testified that in his opinion, Mrs. Malmay did not die instantly, but also stated that the actual time of her death could not be determined although the time of death stated on the death certificate was listed at 6:55 a.m. Dr. McCormick stated that the coroner for Rapides Parish happened upon the accident at 6:30 a.m. and his report indicated that her death occurred prior to 6:30 a.m. McCormick testified that he had no evidence that Mrs. Malmay was ever conscious after the wreck and stated that he doubted that she ever was conscious.
Absent any indication that the decedent consciously suffered any pre-death pain, an award for pain and suffering would be inappropriate. Consequently, it was properly denied under these facts. See Daniels v. Conn, 382 So.2d 945 (La. 1980); Harrell v. Empire Fire and Marine Insurance, 449 So.2d 1177 (La.App.2d Cir. 1984); Taylor v. Charity Hospital, 466 So.2d 736 (La.App. 4th Cir.1985); Poyner v. Cure, 443 So.2d 1151 (La.App. 5th Cir. 1983), writ denied, 446 So.2d 1225 (La. 1984); Blanchard v. Rodrigue, 340 So.2d 1001 (La.App. 1st Cir.1976), writ denied, 341 So.2d 1129, 1130 (La.1977).

ASSUMPTION OF RISK
Appellant, Billy Sizemore, asserts that Deborah Malmay assumed the risk of the injuries that she received in the accident, or was contributorily negligent because she knew or should have known of Billy Sizemore's condition and nevertheless got into the car with him.
In Prestenbach v. Sentry Insurance Company, 340 So.2d 1331 (La.1976), the Supreme Court stated that:
The law is well settled that a guest passenger riding with a driver who has been drinking excessively assumes the risk of injuries received in an accident caused in whole or in part by the driver's *1366 negligence, if the alcohol-induced impairment of the driver's ability is a substantial contributory cause of the driver's negligence and if the guest passenger knows or should have known of the driver's condition and nevertheless voluntarily rides with him. Marcotte v. Travelers Ins. Co., 258 La. 989, 249 So.2d 105 (1971); Jones v. Continental Casualty Co., 246 La. 921, 169 So.2d 50 (1964).
As with other affirmative defenses, the defendant who pleads contributory negligence or assumption of the risk bears the burden of proving it. La.C. Civ.P. Art. 1005; McInnis v. Fireman's Fund Insurance Company, 322 So.2d 155 (La.1975); Marcotte v. Travelers Ins. Co., cited above. In the present case, this means that, to defeat recovery for damages caused by the driver's undoubted negligence, the defendant must prove by a preponderance of the evidence that: (1) the driver was intoxicated; (2) his intoxication was a cause of the accident; and (3) the plaintiff's decedent knew or should have known of the driver's condition....
The trial court rejected both the contributory negligence and assumption of risk defenses, noting that the evidence did not establish that Billy Sizemore was so obviously intoxicated that persons associated with him would know of his alcohol induced impairment. The trial judge's conclusion is supported. Craig Heggen testified that he could not say that Billy Sizemore was intoxicated when he gave him the keys to the vehicle. Craig testified that Billy was not stumbling and appeared to be in possession of his faculties. No evidence was adduced to support a conclusion that Deborah Malmay was aware of Sizemore's intoxication or necessarily should have been aware of it.
For the reasons set forth above, the trial court's judgment is affirmed in all respects. Costs of this appeal are assessed equally against each appellant.
AFFIRMED.