411 So.2d 1159 (1982)
Thomas BLACK
v.
EBASCO SERVICES, INC., et al.
No. 14594.
Court of Appeal of Louisiana, First Circuit.
March 2, 1982.
Rehearing Denied April 13, 1982.
Writ Denied May 28, 1982.
*1160 Kenneth L. Riche, Baton Rouge, for plaintiff-appellant Thomas Black.
Paul B. Deal, George E. Cain, Jr., New Orleans, for defendant-appellee Scaffolding & Erection Service, Inc., Ebasco Services, Inc., and Employers Cas. Co.
Esmond Phelps, II, Dodge Hobson, New Orleans, for defendant-intervenor Employers Nat. Ins. Co.
Before COVINGTON, COLE and WATKINS, JJ.
COLE, Judge.
On August 10, 1979, plaintiff-appellant, Thomas Black, filed suit seeking recovery for damages he sustained as a result of a fall from a scaffold during the course of his employment with Southern States Masonry & Equipment, Inc. (Southern States). Named as defendants therein were: 1) Ebasco Services, Incorporated (Ebasco), the general contractor of appellant's employer on the construction project on which appellant was injured; 2) Scaffolding Rental and Erection Service (Scaffolding Rental), a subcontractor of Ebasco, responsible for the erection and maintenance of all scaffolding used on the construction site; and 3) Employers Casualty Co., alleged by appellant to be the public liability insurer of Scaffolding Rental.[1] Employers National Insurance Company (Employers National) intervened in this suit, as the workmen's compensation *1161 insurer of appellant's employer, Southern States, seeking a preference on any judgment rendered in favor of appellant to the extent of the benefits it had paid to him. Thereafter, appellant amended his petition to add Employers National, as the public liability insurer of Scaffolding Rental, as an additional defendant.[2] Since it was the general contractor of appellant's employer, and thus a statutory employer of appellant under LSA-R.S. 23:1061, the suit against Ebasco was dismissed on an exception of no cause of action.
Trial of this matter was held on January 20 and 21, 1981. Judgment was rendered, for written reasons assigned, on February 18, 1981, in favor of appellant and against defendants, Scaffolding Rental and Employers National, in solido, in the amount of $170,922.53. (According to the written reasons for judgment, this amount represents $3,922.53 for stipulated medical expenses and $167,000.00 for pain and suffering, future medical expenses, and loss of past and future wages.) There was also judgment in favor of intervenor, Employers National, in accordance with the stipulation of the parties, in the amount of $19,432.53, to be paid out of the proceeds of appellant's judgment. Judgment was signed accordingly on March 10, 1981.
Appellant now appeals to this court complaining that the amount awarded to him was inadequate. The only issue, therefore, is that of quantum.
On December 11, 1978, appellant's ankle was injured when he fell from a work scaffold. He was immediately taken to the emergency room of St. Charles Hospital, and was then transferred to Our Lady of the Lake Hospital in Baton Rouge, where his ankle was operated on that same day. Two metal screws and two pins, which are still in place in his ankle, were inserted during this operation. Appellant was released from the hospital on December 16, 1978.
Appellant's injuries consisted of a comminuted fracture with medial dislocation of the right talus (ankle joint), a comminuted fracture of the medial malleolus of the right ankle, and a chip fracture of the medial aspect of the lateral malleolus of the right ankle. By far, the most serious of these injuries was the dislocated talus. The medical evidence in the record indicates this type of injury is very severe and extremely slow to heal. This is evident from the fact that, at the time of the trial, over two years after the accident, his doctor felt it was too early to determine appellant's ultimate prognosis. Appellant was still under medical treatment at the time of the trial.
It was necessary for appellant to wear a cast for six months and to use crutches from the time of the accident until September 1980, at which time his doctor advised him he could dispense with the crutches except when walking long distances. Appellant testified his ankle often swelled, causing him to experience bad pain. This pain was particularly severe for the six months his foot was in the cast. He testified he continues to suffer some pain and swelling, particularly when he does much walking. Appellant was prescribed pain medication from time to time when the pain was most severe and took aspirins the rest of the time. Additionally, appellant testified his injury prevented him from pursuing the recreational activities, such as hunting and fishing, which he previously enjoyed.
Although no percentage of disability was assigned, the medical evidence indicates, even with the maximum recovery possible under the circumstances, appellant's ankle will never be normal. He will always suffer from some limitation of motion in his foot. He will also be unable to walk on uneven surfaces or do any climbing. Additionally, the medical evidence indicates he has a significantly increased chance of developing arthritis due to his injury. The evidence also shows future surgery will be *1162 needed to remove the metal screws placed in appellant's ankle. Although appellant's progress has been good for this type of injury, there is always the danger his ankle will not heal properly and the talus will collapse, having disastrous results and requiring further surgery.
Appellant, who was fifty years old at the time, has been unemployed since the accident. He has been drawing social security benefits of approximately $600.00 per month during this period. He also received workmen's compensation benefits totaling $15,510.00 during this period.
Prior to his injury, appellant was employed as a brick mason foreman. He has experience in no field other than brick masonry. His wages for the three years prior to his accident (1976, 1977, and 1978) were, respectively, $18,196.00, $16,882.00 and $18,087.00. He would have earned approximately $1,380.00 more in 1978 had he not been injured on December 11th. Actual earnings for 1978, the last full year prior to the injury, would, therefore, have been $19,467.00.
Dr. Jan Warren Duggar, an economist appearing on appellant's behalf, was the only witness who testified as to appellant's economic loss. He estimated appellant's loss of past wages and fringe benefits to be in the amount of $61,500.00. His loss of future wages and fringe benefits, minus a minimum wage differential, was estimated to be in the amount of $316,017.00. Duggar included group insurance and pension payments, which appellant's employer would have paid directly into a union fund, in his estimates of appellant's loss of wages. Duggar's calculations were based upon a 12.6 year work life expectancy, a 5% discount rate, and a 5.8% productivity and wage increase.
On cross-examination of Duggar, it was pointed out by appellee that, although Duggar's figures were based upon a 40 hour week, 52 weeks per year, appellant, in fact, did not work this full amount of time. In his brief, appellant acknowledges this fact by submitting that all of Duggar's figures be reduced by 13%, since appellant's work record reflects an 87% employment activity. Appellee also pointed out that, although appellant's hourly wage had increased significantly from 1976 to 1978, his annual salary had not. Duggar acknowledged this fact probably indicated appellant had worked less during the latter two years, further showing the irregularity of his work activity.
The medical evidence supports the trial judge's conclusion that appellant will most likely never be able to return to work in the field of brick masonry. The trial judge was of the opinion he should be able to return to work in some less physical job.
Appellant has set forth five specifications of error, all relating to quantum. Appellant argues the trial judge failed to award sufficient damages for 1) past and future economic loss, 2) past and future physical pain, suffering, anguish and anxiety and 3) permanent disability; and that he failed to award any damages for 4) loss of plaintiff's ability to engage in his occupation and 5) plaintiff's fear that his condition might worsen.
The trier of fact is afforded broad discretion in making an award of general damages. La.C.C. art. 1934(3). Only when the record reveals a clear abuse of this discretion is an appellate court justified in disturbing a trial court award. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Carollo v. Wilson, 353 So.2d 249 (La.1977); Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976); Bitoun v. Landry, 302 So.2d 278 (La. 1974); and Autin v. Allstate Insurance Company, 402 So.2d 219 (La.App. 1st Cir. 1981). In Bitoun, supra, the Louisiana Supreme Court said, at page 279:
"... The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court. Only when the trial court abuses its broad discretion should the *1163 award be adjusted, either up or down." (Emphasis added.)
In Reck v. Stevens, 373 So.2d 498 (La.1979), the Louisiana Supreme Court set out the standard to be followed by appellate courts in reviewing trial court damage awards. The court said, at page 501:
"Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much3 discretion,' La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case."
The same standard of review is applied to awards of lost wages. Since such awards are speculative by nature and cannot be calculated with mathematical certainty, the trial court necessarily must have much discretion in fixing lost wage awards. Reeves v. Louisiana and Arkansas Railway Co., 304 So.2d 370 (La.App. 1st Cir. 1974), writ denied 305 So.2d 123 (1974). Such awards may not be disturbed absent an abuse of discretion. Robinson v. Graves, 343 So.2d 147 (La.1977).
A review of the award made in this case is complicated by the fact that it was an in globo award, with the exception of past medical expenses, which were awarded separately. There is simply no way of knowing the amount awarded by the trial judge for each element of damages.
This problem was considered in Mullin v. Vessier, 400 So.2d 1192 (La.App. 1st Cir. 1981), a case in which an award for general damages was made by the trial court, without itemization of each element of damages. This court, at pages 1192 and 1193, stated:
"Seldom, if ever, are the various elements of general damages itemized and an award made for each element. Ogaard v. Wiley, 325 So.2d 642 (La.App. 3rd Cir. 1975). Such itemization is not required. Chaisson v. J. Ray McDermott & Co., 324 So.2d 844 (La.App. 1st Cir. 1974), writ denied, 328 So.2d 86 (La.1976). The peculiar facts related to each item must indicate support for the total award. Ogaard v. Wiley, supra. It cannot be said that the district court omitted consideration of any particular items in reaching its decision on the total award for general damages in this case. Therefore, we turn to an examination of the record to review the district court's total award for general damages. In so doing, we remain cognizant of the various items which may indicate support for the total award...." (Emphasis added.)
The total award must, therefore, be considered as a whole in determining whether or not the trial judge has abused his discretion.
The primary specification of error advanced by appellant relates to the inadequacy of the award with respect to the economic loss sustained by him. The figures of economic loss presented by him at trial were substantially greater than the total amount awarded by the trial judge for all of his damages, i.e., $377,517.00 as contrasted to $167,000.00. The trial judge obviously rejected the opinion of appellant's expert and the figures presented by him. This is so even though there was no contradictory evidence disputing the figures presented or the method of calculation.
The determination as to whether or not to accept the expert's testimony was factual in nature. We realize there were some factors which could have led the trial judge to reject the probative value of this testimony. For example, appellee brought out on cross-examination that Duggar's calculations were based on 100% employment activity, which the evidence did not support in appellant's case, i.e., appellant did not work *1164 40 hours per week, 52 weeks a year. Also, the trial judge may have felt a discount rate and wage increase rate other than the combinations presented by appellant was more appropriate. Additionally, although the trial judge stated appellant would probably earn less money than before at any new, less physical work he undertook, he may have felt he could earn more than minimum wage. In appellant's figures, a future earning differential based on the minimum wage was deducted.
Due to the fact the award is not itemized, we have no inkling of the amount awarded by the judge for past and future economic loss or the method he used in calculating this loss. We do know the trial judge felt it important to consider appellant's net earnings rather than his gross earnings. The trial judge remarked, in overruling an objection, that it was very important to consider appellant's take-home pay. This constitutes error since a trial judge should consider gross, rather than net, earnings in making an award of lost wages. Moran v. Canal Indemnity Insurance Company, 387 So.2d 1243 (La.App. 1st Cir. 1980); Reeves v. Louisiana and Arkansas Railway Co., supra. The error undoubtedly had some effect upon the trial judge's assessment of total damages.
We conclude the trial court abused its discretion in awarding only the sum of $167,000.00 for the totality of the several items of damages.
One of the items of damages lends itself to a fairly accurate evaluation. This is appellant's past economic loss, i.e., wages he would have earned from the date of the accident until the time of trial. Adjusting the figures of Dr. Duggar to reflect an 87% employment activity, appellant's past economic loss amounted to $53,505.00. And, if we consider only appellant's earnings for the last full year of employment prior to the accident, this item would be approximately $40,000.00, plus fringe benefits. Considering all factors, the evidence amply supports an award of $45,000.00 for this item of damage.
As regards pain and suffering, past and future, the trial court was in a better position to assess appellant's complaints and consider the subjective factors. However, absent a separate evaluation by the trial court, we must now make this factual determination. The doctors who appeared were of the opinion appellant's injuries resulted in severe pain. Fracture and dislocation of the ankle joint, according to the evidence, results in swelling from time to time. This produces pain. It particularly occurs if appellant attempts prolonged walking. In addition to this pain and discomfort, appellant must undergo surgery in the future to remove the metal screws and pins. This, of course, will cause pain and suffering. Also, for the remainder of appellant's life there will be increasing pain, discomfort and problems associated with the arthritic condition caused by the injury. Appellant's life expectancy is approximately twenty-five years.
A review of prior jurisprudence in this instance is of doubtful benefit due to the facts and circumstances peculiar only to this case. We have reviewed the cases cited by appellant and find, for the most part, they involve more severe, painful and disabling injuries than those experienced by appellant. Also, seldom are the damages itemized in case law, thus permitting the isolation of pain and suffering from other items of damages. We note this problem in Chapman v. Freeman's Oilfield Service, Inc., 254 So.2d 468 (La.App. 3d Cir. 1971), a case wherein the injuries were most similar to those now before the court. See also, Hebert v. Diamond M Co., 385 So.2d 410 (La.App. 1st Cir. 1980); Dement v. Barnette, 375 So.2d 202 (La.App. 2d Cir. 1979). Based upon all relevant factors, we conclude a reasonable award for past and future pain and suffering to be the sum of $40,000.00.
Appellant sought a separate award for permanent disability. There is no question but what the disabling injuries to appellant's right ankle has left him unable to pursue the field of brick masonry. Additionally, he is handicapped in non-occupational *1165 activities. His ankle will never permit him to resume a normal life. For this bodily deficit with its associated changes in lifestyle, an award of $25,000 is reasonable.
Another appropriate item of damages sought by appellant is future medical expenses. Although the cost is somewhat speculative, the need for future surgery substantiates an award which we fix at $1,000.00.
Appellant also argues it was error for the trial judge not to have awarded damages for loss of ability to engage in appellant's lifetime occupation and his fear that his medical condition may worsen. This argument is without merit since, as correctly contended by appellee, appellant did not allege or request recovery for these items of damages at trial level. Furthermore, there is little or no proof of these damages in the record. Consequently, appellant cannot now complain with respect to non-recovery of these items.
The remaining item of damages is loss of future wages. Based upon factors which have been approved in numerous court decisions, Dr. Duggar arrived at a figure of $316,017.00. Adjusting this also to reflect an 87% employment activity, as we did for past wage loss, the amount is reduced to $274,950.00. However, because awards for loss of future earnings are speculative in nature, we reject a result based solely upon a mathematical formula. We prefer to consider mathematical projections of future earnings as only one of several guides relevant to this determination. An award for future economic loss which we deem to be just to both appellant and appellee is $135,000.00.
The abuse of the trial court's discretion in this case is demonstrated by the itemization of the various elements of damage. Without considering future economic loss, we have illustrated damages totaling $111,000.00. Subtracting that amount from the in globo award of $167,000.00, leaves only $56,000.00 for loss of future income, an amount grossly inadequate. The facts related to each item of damages do not, therefore, support the total award of $167,000.00. See, Mullin v. Vessier, supra.
Having applied the methodology for appellate review of awards for general damages, as set forth in Reck v. Stevens, supra, we raise the award of $170,922.53 to $249,922.53, a point we deem to be the lowest which is reasonably within the discretion afforded the trial court. In all other respects the judgment of the trial court is affirmed. Appellee is to pay all costs of this appeal.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] In its answer, Employers Casualty Co. denied that it was the public liability insurer of Scaffolding and, in fact, no judgment was rendered as to it.
[2] Employers National was the insurer of both Southern States and Scaffolding Rental. It thus appears in this suit both as defendant, in its capacity as the public liability insurer of Scaffolding Rental, and as intervenor, in its capacity as workmen's compensation insurer of Southern States.