546 So.2d 621 (1989)
Jackie MONTGOMERY, et ux., Plaintiffs-Appellees,
v.
OPELOUSAS GENERAL HOSPITAL, et al., Defendants-Appellants.
No. 87-492.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1989.
*622 Kermit A. Doucet, Lafayette, for plaintiffs-appellees.
Watson, Blanche, Wilson & Posner, Katherine Gilmore, Ambrose Ramsey, S. Alfred Adams, Baton Rouge, for defendants-appellants.
Before GUIDRY, FORET and DOUCET, JJ.
GUIDRY, Judge.
This is a medical malpractice suit instituted by Jackie Montgomery and her husband, J.L. Montgomery, against Robert Sullivan, a medical technologist, Opelousas General Hospital, and the Louisiana Association of Hospitals Trust Fund (the Louisiana Patients' Compensation Fund). In our original opinion reported at 529 So.2d 52 (La.App. 3rd Cir.1988), we reversed the judgment of the trial court and ordered plaintiffs' suit dismissed with prejudice. The Supreme Court of Louisiana granted a writ of certiorari, 532 So.2d 164 (La.1988), and in an opinion dated March 13,1989, 540 So.2d 312, reversed our judgment, reinstated the trial court's finding as to liability and remanded the matter to this court for consideration of appellants' argument that the trial court's damage award is excessive.

QUANTUM
The trial court awarded Jackie Montgomery $200,000.00 in damages and $5,000.00 in medical expenses. J.L. Montgomery was awarded $8,000.00 for loss of consortium. Appellants do not challenge the award for medical expenses but contend that the damage awa, rd to Jackie Montgomery and that to J.L. Montgomery are clearly excessive.
"Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made in the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Black v. Ebasco Services, Inc., 411 So.2d 1159 (La.App. 1st Cir.1982); Greene v. Wright, 365 So.2d 551 (La.App. 1st Cir. 1978). Moreover, the appellate function in reviewing quantum is limited to raising inadequate awards to the lowest amount the trial court could have reasonably awarded, and lowering excessive awards to the highest amount the trial court could have reasonably awarded. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston *623 Industries, supra; Alexander v. Leger, 423 So.2d 731 (La.App. 3d Cir. 1982); Greene v. Wright, supra. In the final analysis, the damages due in a given case must reflect the facts and circumstances of that case. Alexander v. Leger, supra; Wilkinson v. Hartford Accident & Indemnity Co., 421 So.2d 440 (La.App. 3d Cir.1982); Profit v. Linn, 346 So.2d 253 (La.App. 1st Cir. 1977).
General damages are those which may not be fixed with pecuniary exactitude; they instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms. Boswell v. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978); Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La. 1974)."
Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2d Cir.1984).

DAMAGE AWARD TO JACKIE MONTGOMERY
Inasmuch as the jury did not specify how much of the damage award was for economic loss and how much was for general damages, we will attempt to make that distinction in order to aid in our evaluation of her damage award.
At the time plaintiff suffered the injury to the median nerve of her right arm (February 17, 1984), she was employed as a school bus driver by Washington Bus, Incorporated (WBI). Mrs. Montgomery began her employment with WBI in September of 1981 and was paid at the rate of $150.00 per month. In October of 1982, her salary was raised to $200.00 per month (for nine months out of the year) and it remained at that level until she resigned. While the record is silent as to the date of her resignation, a letter from Marvin Anderson, secretary/treasurer of WBI, established that plaintiff was still employed by WBI on April 18, 1986.
At trial, Mrs. Montgomery testified that she can no longer drive a school bus. She stated that she can no longer lift heavy objects or engage in hard work as such activities cause pain in her lower right arm. Mrs. Montgomery stated that besides driving a school bus, her past work experience included working in grocery stores and similar establishments plus several years of clerical experience at Opelousas General Hospital.
Plaintiff presented two witnesses who testified that they offered Mrs. Montgomery work in grocery store type settings after her accident. Appellee claims that she turned down one of the jobs because she knew she couldn't do it and that she tried the other job for two days, but had to quit because she was physically unable to meet the demands of the position. Allegedly, either position would have paid her $4.50 to $5.00 per hour. The only evidence plaintiff presented relating to past grocery store work was a 1981 W-2 form from St. Amand's Grocery showing total wages for the year of $2,950.51.
When questioned concerning her ability to perform clerical work, Mrs. Montgomery replied that she had not applied for a clerical position, even though she was qualified and physically able to handle a clerical job. She stated that she was just not interested in a clerical position such as she previously held at Opelousas General Hospital.
"Awards for loss of future income are inherently speculative, and are intrinsically insusceptible of being calculated with mathematical certainty. Thus, the courts must exercise sound judicial discretion in determining these awards, and render awards which are consistent with the record and which work an injustice on neither party. Robinson v. Graves, 343 So.2d 147 (La.1977); Edwards v. Sims, 294 So.2d 611 (La.App.1974); Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968); Holmes v. Texaco, Inc., 422 So.2d 1302 (La.App. 5th Cir.1982); Black v. Ebasco Services, Inc., 411 So.2d 1159 (La.App. 1st Cir.1982); Payton v. Travelers Ins. Co., 373 So.2d 1324 (La.App. 4th Cir.1979).
A number of factors must be analyzed in determining loss of future income, including *624 the plaintiff's physical condition before and after his injury; his past work record and the consistency thereof; the amount plaintiff probably would have earned absent the injury complained of; and the probability he would have continued to earn wages over the balance of his working life. Viator v. Gilbert, supra; Payton v. Travelers Ins. Co., supra. It is well established that a loss of future income award is not merely predicated upon the difference between a plaintiffs earnings before and after a disability injury. Such an award is predicated, more strictly considered, upon the difference between a plaintiffs earning capacity before and after a disabling injury. Folse v. Fakouri, 371 So.2d 1120 (La.1979); Ward v. Louisiana & Arkansas Railway Co., 451 So.2d 597 (La.App. 2d Cir.1984); Green v. Farmers Ins. Co., 412 So.2d 1136 (La.App. 2d Cir.1982); Hill v. Sills, 404 So.2d 1323 (La.App. 2d Cir.1981). Loss of future income awards thus encompass the loss of a plaintiffs earning potentialthe loss or reduction of a persons' capability to do that for which he is equipped by nature, training, and experience, and for which he may receive recompense...."
Morgan v. Willis-Knighton Medical Center, supra.
Plaintiff presented no economic experts in an attempt to quantify her alleged loss of income. Further, none of the doctors who treated Mrs. Montgomery assigned any percentage of disability either to her right arm or to her body as a whole. At the time of trial plaintiff was 45 years old. If she had continued to work as a school bus driver for the next 15 years at the same rate of pay she was earning at the time of her resignation, she would have grossed $27,000.00. Considering the lack of any expert economic testimony, the lack of any assignment of disability rating percentage by her doctors and the fact that plaintiff admittedly had not sought any employment for which she is suited by reason of her training, age, experience and physical condition (clerical work), we find that the highest possible award the trier of fact could have made for economic loss (both past and future) is the sum of $30,000.00.
"Before a trial court's award in general damages may be viewed as excessive or inadequate, this Court must look first, not to prior awards, but to the individual circumstances peculiar to the case. Only after an analysis of the facts of a particular case and an analysis of the particular injuries to the party may this Court determine the excessiveness or inadequacy of the award. Reck v. Stevens, 373 So.2d 498 (La.1979); Darbonne v. Safeco Ins. Co. of America, 452 So.2d 801 (La. App. 3 Cir.1984). After an examination of the particular facts of a case, an appellate court must then determine whether the trier of fact clearly abused his much discretion in awarding damages. Former La.C.C. Art. 1934(3); Reck, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Darbonne, supra.
An examination of prior awards, in the initial determination of excessiveness or insufficiency, serves a limited function to serve as an aid in determining whether the award complained of is greatly disproportionate to past awards for "truly similar" injuries. Reck, svipra, at page 501, citing Coco, supra. The mass of awards for truly similar injuries may therefore be used as an aid in determining a disproportion in the award complained of when viewed in light of the facts of the case; however, an appellate court will only disturb the award of the trial judge upon an initial determination of an abuse of the great discretion afforded the trier of fact. La.C.C. Art. 2324.1; Williams v. State Farm Mut. Auto. Ins. Co., 349 So.2d 1275 (La.App. 1 Cir.1977), writ, den., 351 So.2d 175 (La. 1977)." (footnote omitted).
Thomas v. West Calcasieu-Cameron Hospital, 497 So.2d 375 (La.App. 3rd Cir.1986) at 379.
On February 17, 1984, Jackie Montgomery suffered damage to her right median nerve as a result of a venipuncture. Surgery, described as a right lacertus fibrous release, was performed on June 4, 1984. *625 Before the incident and June 1984 surgery, plaintiff had full use of her right arm; was able to engage in hard work; regularly attended to normal house work; and, enjoyed recreational activities such as badminton, gardening, hunting and fishing. Plaintiff and her husband testified that since her arm surgery, Mrs. Montgomery requires help with garden and yard work and has to make more use of her left hand and arm while hunting and fishing.
After evaluating Mrs. Montgomery on November 14, 1984, Dr. James Domingue wrote the following in a letter to Dr. Lazaro:
"On examination, weight [sic] is given as 5 ft 6 in and weight as 175 pounds. The neck is supple with full range of motion. Spurling's maneuver is negative. I can palpate deeply around the forearm. The only tender spots are right under the scar. There is no Tinel's sign at the wrist or elbow. The hands are both cool, and there is no color differential between them. The reflexes are trace in the upper extremities and absent in the legs. The toes are downgoing. On sensory testing, I can find no loss of pin appreciation in the upper limbs. On motor testing, there is no definite wasting. Strength testing is somewhat hindered by pain but there is no definite weakness. The pulses are full. Adson's maneuver is negative."
From Mrs. Montgomery's own testimony, we discern that her arm pain is not constant and that when excessive exertion brings on pain, she can usually get relief by discontinuing the offending activity. She denies the use of pain medication. Plaintiff admits that her condition has improved since her last visit to Dr. Domingue in November of 1984, but she also states that she is not asymtomatic. Plaintiff makes no claim that she is unable to perform simple routine tasks or that she is unable to care for her own personal needs. Rather, her complaints are centered around her inability to perform tasks or engage in activities which place considerable stress on her injured arm. In light of the particular facts in this case, we find that the trier of fact clearly abused its much discretion in awarding plaintiff general damages, which we approximate at $170,000.00.
As an aid in determining the highest amount the trial court could reasonably have awarded, we turn to awards made by other triers of fact for similar injuries. The most factually similar case we can find is Thomas v. West Calcasieu-Cameron Hospital, supra. In that case, plaintiff, Mrs. Thomas, suffered damage to either her median or ulnar nerve during a venipuncture. In the Thomas case, supra, the court awarded plaintiff $90,000.00 in general damages. While the types of injury are almost identical, the resultant disfunctions are markedly different. Evidence in Mrs. Thomas' case established that:
"As a result of Barnett negligently injecting a needle into her arm, plaintiff is now unable to use her dominant right arm and hand for many purposes. She is unable to pick up small or heavy objects, is unable to thread a needle and is often unable to put earrings on, and must rely on and become accustomed to using her left arm and hand for many purposes, including handling toilet paper. She constantly drops objects which require two good hands to control; for instance, she is usually unable to unscrew a bottle cap without dropping it to the floor. Due to her lack of sensation in her right arm and hand, she is in danger of severely burning herself while being completely unaware that she is doing so. As a result of the May, 1980 incident, plaintiff is significantly permanently disabled. She will be required to adjust to using her left hand for many simple tasks, making those tasks more difficult, and will be unable to perform many household duties and hobbies which she enjoyed prior to her injury."
Thomas, supra, at 381. Clearly Mrs. Thomas' resulting disability was of much greater magnitude than that of Mrs. Montgomery.
In Morgan v. Willis-Knighton Medical Center, supra, a general damage award of $50,000.00 to a 56 year old territorial field manager whose job required extensive driving *626 while in pam was affirmed. Plaintiff was assigned a 27% disability of the right arm and 16% impairment of the body as a whole as a result of the injury to the ulnar nerve of his right arm. As a result of that injury, Morgan suffered decreased sensation in several fingers and muscle atrophy. Further, it was determined that his pain would probably continue the rest of his life.
A combined award (lost wages plus general damages) of $55,000.00 was upheld by this court in Belmon v. St. Frances Cabrini Hospital, 427 So.2d 541 (La.App. 3rd Cir.1983). Mrs. Belmon, a physical therapist's assistant, suffered permanent damage to the right median and radial nerves plus permanent muscle damage in her right arm and hand while being "Heparinized" for a suspected pulmonary embolism. The injury left her unable to fully perform her work and restricted her ability to write and perform other functions with her hand.
In Sibley v. Hayden, 423 So.2d 54 (La. App. 1st Cir.1982), Diana Dabadie received injuries to her right arm and hand including a compressed nerve as a result of a three vehicle accident. She was hospitalized for surgery to repair the compressed nerve. The surgery left her with scarring on the right arm and hand and permanent partial disability of the arm. She additionally suffered aggravation of a pre-existing knee injury and sustained a mild whiplash. Our brethren of the First Circuit upheld a general damage award of $15,000.00.
Our careful consideration of the record in this case prompts the conclusion that the highest award of general damages which is reasonably supported by the record is the sum of $75,000.00.

AWARD FOR LOSS OF CONSORTIUM
Defendants-appellants also argue that the $8,000.00 awarded to J.L. Montgomery for loss of consortium is excessive.
Both Mr. and Mrs. Montgomery testified that following her accident, Mrs. Montgomery was unable to perform any household, yard or garden tasks for several months. Mr. Montgomery and his son must still assist Mrs. Montgomery with the housework and the men of the house have had to take over the yard and garden tasks formerly performed by Jackie Montgomery.
Additionally, both husband and wife described a diminished sex life following the injury to Mrs. Montgomery's arm. The record reflects that the pain in her arm not only decreased Mrs. Montgomery's desire for sex, but was a distracting and limiting factor when such relations were attempted. Mr. Montgomery testified that their sex life was just starting to return to normal in October of 1986.
While we consider the contested award to be generous, we do not find it to be so excessive as to constitute an abuse of discretion. See Morgan v. Willis-Knighton Medical Center, supra.
For the above and foregoing reasons, we reduce the damage award to Mrs. Jackie Montgomery from $200,000.00 to the sum of $105,000.00. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendants-appellants.
AFFIRMED AS AMENDED.