JiKNOLL, Judge.
Timothy F. Broussard (Broussard) filed suit for injuries he sustained in an automobile accident. At trial, the defendants stipulated to liability. The jury awarded $12,375 in general damages, $12,781.17 for medical expenses, and $10,041.66 for loss of wages and wage earning capacity, for a total award of $35,197.83. On appeal, Broussard argues that his award of $12,375 for general damages was unreasonably low. Finding no manifest error, we affirm.
FACTS
On February 14,1991, Broussard, who was 28 years of age, was driving to work in his mother’s 1986 Toyota pickup truck in a northerly direction on 1-90 from Morgan City toward New Iberia, between 7:15 and 7:30 a.m., when Chad Thomas Hughes struck Broussard’s vehicle, causing it to roll at least twice. Immediately after the accident, Broussard exited his vehicle and walked across the street to a nearby Ustore to clean up and to call his mother. Broussard sought emergency room treatment at Iberia General Hospital. While there, Broussard complained only of lower back pain that radiated down into his left leg. After an examination, x-rays, and other tests, Broussard was diagnosed with lumbar spine strain in his lower back area. He was prescribed Anaprox for his pain and was released with instructions to obtain a follow-up examination by his family physician.
Broussard had a pre-existing congenital condition. In 1977, when Broussard was fourteen years of age, he complained of pain and soreness in his shoulder and upper back to Dr. James R. Romero, his family physician, who then diagnosed that Broussard suffered from a hypertrophy[1] of the muscles in the area of his back near his shoulder. Dr. Romero referred Broussard to Dr. Richard W. LeBlanc, an orthopaedist, for further diagnosis and treatment. In 1978, Dr. Le-Blanc determined that Broussard suffered from congenital scoliosis with hemivertebra[2] at the T-7/T-8 level to the right thoracic. Because Broussard complained of pain in this area, Dr. LeBlanc’s records suggested that Broussard might eventually require corrective surgery to alleviate his congenital condition.
The seriousness of Broussard’s congenital disability was further documented in 1981 and 1985 by Dr. Romero. In 1981 and 1985, *961 to obtain funds for college tuition, Broussard asked Dr. Romero to confirm and record the extent of his hemivertebra and congenital disability for the purpose of qualifying for governmental financial assistance. On both of these occasions, Dr. Romero acknowledged and |3Confirmed that Broussard continued to suffer from his congenital spinal abnormalities.
At trial, Broussard maintained that the 1991 automobile accident had severely aggravated his congenital hemivertebra. He claimed that he had not experienced any difficulty or pain associated with his congenital hemivertebra until after the 1991 automobile accident. Broussard presented medical evidence from several doctors, but primarily relied upon the videotaped testimony of Dr. Stuart I. Phillips, an orthopaedic surgeon, who opined that Broussard’s congenital hemi-vertebra had been aggravated by trauma from the 1991 automobile accident, as well as a 1993 automobile accident.
On the other hand, the defendants argued at trial that Broussard had sustained only a minor lumbar spine strain in his lower back area as a result of the 1991 automobile accident. The defendants countered that Brous-sard’s condition was aggravated more by five previous accidents, a subsequent January 25, 1993, automobile accident, and his persistence in doing demanding physical labor.
The defendants relied upon Dr. James C. McDaniel, an orthopaedic surgeon, to counter Dr. Phillips’ opinion concerning the type, extent and cause of Broussard’s injuries. Dr. McDaniel examined Broussard in connection with the injuries that he received in a second automobile accident on January 25, 1993. After this second automobile accident, the medical evidence showed that Broussard complained of new pains in his neck, upper back, and in the area of his congenital hemi-vertebra. After examining Broussard and reviewing the findings contained in Brous-sard’s medical history, Dr. McDaniel testified that he did not detect any aggravation in the area of Broussard’s congenital hemivertebra that may have been caused by the 1991 automobile accident. Rather, Dr. McDaniel opined that Broussard experienced a |4lower lumbar sprain or strain which radiated to his left hip. Dr. McDaniel also suggested that any pain or aching experienced by Broussard in the area of his hemivertebra was the natural result of a person suffering from such a congenital abnormality who participated in heavy manual labor, like Broussard.
The record shows that Broussard’s employment involved hard manual labor and that he was a good worker. On the same day of the accident, and shortly after being released by Iberia General Hospital, Brous-sard traveled to his place of employment, 4-D Corrosion, an industrial painting and sandblasting company, and worked for three hours. Thereafter, Broussard missed only nine days of work. He continued to work as a corrosion engineer up to seven days per week and often over 100 hours per week in the period following the accident. Broussard described his work in the industrial painting and sandblasting industry as “very demanding.” Notwithstanding other subsequent employment activity, Broussard eventually left 4-D Corrosion to work for Rent-A-Center, a job requiring him to commute approximately 300 miles per day from Loreauville to Alexandria. While working for Renh-A-Center, the record shows that Broussard worked up to fifty hours per week. According to Brous-sard’s testimony, his duties at Rent-A-Center frequently required heavy lifting and transportation of refrigerators and other heavy merchandise while using a dolly.
APPELLATE REVIEW OF GENERAL DAMAGE AWARDS
The trier of fact is granted much discretion in the award of general damages, i.e., those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or life style which cannot really be measured definitively in terms of money. Anderson v. Welding Testing Lab., Inc., 304 So.2d 351 (La.1974). The appellate question is not whether a different award may have been more appropriate, but whether the trial court’s award can be reasonably supported by the record. Montgomery v. Opelousas General Hosp., 546 So.2d 621, 622 *962 (La.App. 3 Cir.), writ denied, 551 So.2d 630 (La.1989) (and cases cited therein).
Appellate review of general damage awards involves a two step process. The first inquiry is whether the award for the particular injury under the circumstances is a clear abuse of the trier of fact’s much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). The second inquiry occurs if an abuse of discretion is found. If an abuse of discretion is found, then the second inquiry allows an appellate court to review prior awards to determine the highest or lowest award reasonably within the trier of fact’s discretion. Coco v. Winston Indust., Inc., 341 So.2d 332 (La.1976). However, as stated by the Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, — U.S. -, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994):
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present ease is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular ease. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Id. 623 So.2d at 1261.
| gin the ease sub judice, the jury was presented with conflicting evidence and had to make credibility determinations as to the extent that the 1991 accident aggravated Broussard’s congenital condition. The jury was aware of Broussard’s five previous accidents, his subsequent January 25,1993, automobile accident, his general denial of any previous pain in the area of his congenital hemivertebra despite his documented history of pain in that area, and his post-accident employment history of jobs requiring demanding physical labor. We do find the general damage award to be on the low side and we might have given a different award if we were the original trier of fact. However, a low award in and of itself is not manifest error, especially in view of the conflicting evidence presented herein. Under these circumstances, we cannot say the jury abused its great discretion in its general damage award to Broussard.
DECREE
For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to Timothy F. Brous-sard.
AFFIRMED.
SAUNDERS, J., dissents with reasons.

. A general increase in bulk of a part or an organ, not due to tumor formation.

. A congenital defect of the spine in which one side of a vertebra fails to develop completely.