751 So.2d 312 (1999)
J.B. SAUCIER, PlaintiffAppellant,
v.
PLAYERS LAKE CHARLES, LLC, DefendantAppellee.
No. 99-1196.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1999.
Rehearing Denied February 16, 2000.
*314 Gregory P. Marceaux, Lake Charles, for J. B. Saucier.
James Buckner Doyle and Michele S. Caballero, Lake Charles, for Players Lake Charles, LLC.
BEFORE: SAUNDERS, WOODARD, and DECUIR, Judges.
SAUNDERS, Judge.
On November 30, 1996, J.B. Saucier (Plaintiff), a patron of Players Lake Charles (Players), became drunk and boisterous. Players' security officers intervened and Plaintiff voluntarily followed the officers onto the boat's deck. Plaintiff continued to be argumentative and demanded that the security officers retrieve his money from the poker table. After attempting to calm Plaintiff, the security officers handcuffed Plaintiff, who then volunteered to leave the boat. Players' security officer informed Plaintiff that "he had his chances" and proceeded to carry him down three flights of stairs in a prone position. Once on the ground floor, Players' security officers paraded Plaintiff through the hotel lobby and detained Plaintiff at the land-based security office. Lake Charles City police was called to the scene and subsequently picked up the Plaintiff.
Plaintiff sued Players for injuries he sustained to his shoulder, alleging false arrest, false imprisonment, and excessive force. The trial court granted Players' motion for directed verdict on Plaintiff's false arrest claim. The jury held that Players did not falsely imprison Plaintiff nor did Players use excessive force in arresting Plaintiff. We affirm the trial court's directed verdict and the jury's finding concerning false imprisonment. However, we reverse the jury's finding that Players' security officers did not use excessive *315 force. We award Plaintiff $150,000.00 in general damages and $16,117.93 in medical specials.

FACTS
On November 29, 1996, J.B. Saucier (Plaintiff) was a patron of Players Casino in Lake Charles (Players), a gaming facility in Lake Charles, Louisiana. Plaintiff arrived at 5:00 p.m. and remained until 1:30 a.m. on November 30, 1996. During his stay, Plaintiff played poker and drank beer. Players' waitresses continuously refilled Plaintiffs drink for some eight hours.
At around 1:00 a.m., Plaintiff exited the poker table and went to the restroom. Upon his return to the poker table, Plaintiff became confused and convinced that another patron had taken his seat at the poker table. Plaintiff also thought his poker chips were moved to another table. Plaintiff then became angry and began to argue with the patron and Players' employees. Robert Barczik, the floor supervisor of the poker room, observed the exchange between Plaintiff and the patron and attempted to intervene. Subsequently, Carla Thomason, security supervisor, was summoned to the scene. Thomason was unsuccessful in calming Plaintiff and he refused to leave the boat. Security officers Craig Campbell and Gary Shelton also arrived on the scene. Finally, the security officers convinced Plaintiff to go outside onto the deck. Plaintiff voluntarily followed them.
Plaintiff refused to leave the boat and demanded that the employees retrieve his money from the poker table. Eventually, Carla Thomason handcuffed Plaintiff as the other security officers held Plaintiffs arms. Both Thomason and Craig, in their respective testimony, stated that the decision to handcuff Plaintiff was because there were not enough officers to attend to Plaintiff until he calmed down. After being handcuffed, Plaintiff informed the security officers and Thomason that he would leave. Nevertheless, they refused to remove the handcuffs and informed Plaintiff that he "had his chances."
Players' officers carried Plaintiff down three flights of stairs, through the hotel lobby, transported him to a land-based security office, and awaited the arrival of Lake Charles City Police. The Lake Charles City Police arrived within fifteen to twenty minutes. Plaintiff was escorted by the Lake Charles police officers to the police station, but no formal charges were filed.
Upon his release, Plaintiff went to the emergency room for the pain in his shoulder, neck, back, and knees. On March 26, 1997, Plaintiff was treated by Dr. Dale Bernauer, a specialist in orthopedic surgery. Dr. Bernauer recommended physical therapy and Plaintiff underwent physical therapy for several months. In November 1997, an MRI revealed a torn rotator cuff and a biceps tendon rupture. Dr. Bernauer diagnosed Plaintiff with strained shoulder, biceps tendon rupture, and a partial tear of the rotator cuff. In his testimony, Dr. Bernauer concluded that the injuries were the result of Plaintiff being handcuffed and carried down the stairs. For the last two years, Plaintiff has received periodic injections to reduce pain. According to Dr. Bernauer, Plaintiff will experience continual pain throughout his life and will require periodic injections.

LAW AND ANALYSIS

Maritime Jurisdiction and False Arrest Claim:
Plaintiff presents six assignments of error for our review. We address the first three together. Essentially, the first three assignments of error claim that the trial court committed a legal error in applying maritime law to Plaintiffs false arrest claim and granting Players' motion for directed verdict. According to Plaintiff, La.Civ.Code art. 214 is applicable to Plaintiffs arrest. The Article, in pertinent part, states that "[a] private person may *316 make an arrest when the person arrested has committed a felony, whether in or out of his presence." Plaintiff argues that he did not commit a felony and the arrest was unlawful. Further, Plaintiff asserts that maritime law is not applicable because Players, in their security manual, adopted Louisiana law, namely, Article 214 to control arrest procedures on the casino boat. Players asserts that general maritime law is controlling and it grants the captain of a ship and his crew unlimited authority to arrest a passenger.
In the case sub judice, the trial court granted the directed verdict on the basis that maritime law, and not Louisiana law, is applicable to Plaintiff's claim of false arrest. This is a legal question. When a prejudicial error of law influences the lower court's findings of a material issue of fact and causes it to disregard other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the material facts nova. Rosell v. ESCO, 549 So.2d 840 (La.1989). In the instant case, maritime law is clearly applicable as we are dealing with a vessel in navigable water. See 1 U.S.C.A. § 3; Young v. Players Lake Charles, L.L.C., 47 F.Supp.2d 832 (S.D.Tex.1999).
Concluding that maritime jurisdiction is applicable, we now must address whether the trial court erred in granting a directed verdict on Plaintiff's claim of false arrest. Plaintiff must prove that the arrest was unlawful and that the unlawful arrest resulted in injury. See Touchton v. Kroger, 512 So.2d 520 (La.App. 3 Cir. 1987).
Plaintiff, relying on La.Code Crim.P. art. 214, asserts that his arrest was unlawful because he had not committed a felony. Players Casino argues that maritime law controls this issue and, in accordance with maritime law, the captain of a vessel and his crew have unlimited power in maintaining peace and order on the ship. Thus, Players arrest of Plaintiff was lawful.
In support of their argument, Players refers to Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). Although Bram is a maritime case, we find it clearly distinguishable from the instant case. Bram deals with two murders which occur on the high seas and not within state territorial waters.
The instant case does not involve a murderer and the boat was not on the high seas but in Louisiana territorial waters at the time of the incident. Moreover, no other authority is cited by Players and this court is not aware of any other authority for the proposition of unlimited authority to arrest. In Wilburn Boat Company v. Fireman's Fund Insurance Company, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), the Supreme Court stated that, where there is no existing maritime rule that would govern an action, a court must determine whether it will fashion a new rule or instead, apply existing state law. We find that there is no established general maritime rule governing an arrest effectuated by a private citizen in state territorial water. Thus, we look to Louisiana law and reject Players' argument of unlimited power to arrest on a casino boat.
While it appears the arrest of Plaintiff was unlawful under Article 214, we find that La.R.S. 26:90(13) covers this case and is controlling. La.R.S. 26:90(13) states, in pertinent part, that:
A. No person holding a retail dealer's permit and no agent, associate, employee, representative, or servant of any such person shall do or permit any of the following acts to be done on or about the licensed premises:
. . . .
(13) Permit any disturbance of the peace or obscenity, or any lewd, immoral, or improper entertainment, conduct, or practices on the licensed premises.
On the night of the incident, Plaintiff became loud and boisterous while in the poker room of Players. Plaintiff's actions *317 constituted a disturbance of the peace. Since, Plaintiff has a license to serve alcohol, we find that the arrest of Plaintiff was lawful under La.R.S. 26:90(13).

False Imprisonment:
The fourth assignment of error is that the jury erred in finding that Players did not falsely imprison Plaintiff. To prove false imprisonment, the Plaintiff must show that: (1) Players acted with the intention of confining Plaintiff within fixed boundaries by Players; (2) Players acts directly and indirectly resulted in such confinement; (3) such confinement was unlawful; and (4) the Plaintiff was conscious of the confinement or was actually harmed by it. Most important, the tort of false imprisonment has two essential elements: detention of a person and unlawfulness of such detention. Touchton v. Kroger, 512 So.2d 520 (La.App. 3 Cir.1987).
In the instant case, the jury concluded that Players actions did not constitute false imprisonment. We affirm the jury's holding because, as stated in our discussion of false arrest, Players detention of Plaintiff was lawful under La.R.S. 26:90(13). Thus, Plaintiffs claim of false imprisonment is without merit.

Excessive/Unreasonable Force and Invitee Duty:
The fifth assignment of error is that the jury erred in finding that Players' employees did not use unreasonable force in handcuffing Plaintiff and forcibly carrying him down several flights of stairs. See LaBauve v. State of Louisiana, 618 So.2d 1187 (La.App. 3 Cir.1993). We find that the jury erred. Players' actions constituted excessive force and a breach of duty owed to an invitee. We will discuss each theory separately.
We reiterate that this case is subject to maritime jurisdiction and, as such, maritime substantive law is applicable. The supreme court in Green v. Industrial Helicopters, Inc., 593 So.2d 634, 637 (La.1992), cert. denied, 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992), held that state law may be applied as a supplement to the federal maritime law if state law does not impermissibly conflict with the federal maritime law.

Kyle: Excessive Force
In our analysis of this issue, we apply state law. We note that the trial court applied state law, that neither party contested the applicability of state law, and also note that we are unaware of any conflicting federal law.
A determination of excessive or unnecessary force is a finding of fact which may not be disturbed unless: (1) the record evidence does not furnish a sufficient basis for the finding; or (2) that finding is clearly wrong. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We note that Players had a right to remove Plaintiff from the poker room. However, we find that under the circumstances, Players used excessive force in failing to remove the handcuffs and in carrying Plaintiff down three flights of stairs after he volunteered to leave the boat.
In Kyle v. City of New Orleans, 353 So.2d 969 (La.1977), the supreme court sets forth several factors to consider in making a determination of whether the force used was reasonable under the circumstances. The factors include: (1) the known character of the arrestee; (2) the risks and dangers faced by the officer; (3) the nature of the offense or behavior involved; (4) the chance of escape if the particular means are not employed; (5) the existence of alternative methods of arrest or subduing the arrestee; (6) the physical size, strength and weaponry of the officers as compared to that of the arrestee; and (7) the exigencies of the moment. See Picou v. Terrebonne Parish Sheriff's Office, 343 So.2d 306 (La.App. 1 Cir.), writ denied, 345 So.2d 506 (La.1977).
Although Kyle deals with police officers, we find the factors applicable to the facts of this case. Applying the Kyle factors, *318 we note that Plaintiff was not acting violently toward the security officers. In fact, Plaintiff voluntarily followed the officer to the deck and only refused to leave because Players' security officers had not retrieved his money. We find this to be a reasonable request and Players refusal to comply with the Plaintiff's request was a catalyst for Plaintiffs actions. More important, after being handcuffed, Plaintiff informed the officers that he would leave the boat and that there was no need for the handcuffs. At this point, Players could have allowed Plaintiff to leave the premises and he could have done so injury free. In fact, on previous occasions when Plaintiff became boisterous, Players asked him to leave and he left the boat. Nevertheless, on this occasion, Thomason advised Plaintiff that he "had his chances." Players' refusal to remove the handcuffs and carrying Plaintiff down three flights of stairs after he volunteered to leave constitutes excessive force.
To further support our conclusion of excessive force, Players' security officers Gary Shelton and Larry Miller testified that handcuffing a patron occurs only when the patron is out of control or a threat. A review of the record indicates that Plaintiff was neither. Plaintiff voluntarily followed the security officers onto the deck and Thomason testified that Plaintiff was only being argumentative. It is clear from the record that Plaintiff was not a threat to the three officers at the scene, all of whom had a size advantage and were in better physical condition than Plaintiff.

Invitee Duty
In maritime law, a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew, but does not make a distinction between trespasser, licensee, or invitee. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959) Maritime law also holds the ship owner or operator liable for providing alcohol without adequate supervision. Reyes v. Vantage S.S. Co. Inc., 609 F.2d 140 (5 Cir.1980); Young v. Players Lake Charles, LLC, 47 F.Supp.2d 832 (S.D.Tex.1999); Thier v. Lykes Brothers Inc., 900 F.Supp. 864 (S.D.Tex.1995).
Similarly, Louisiana jurisprudence provides that business owners owe their patrons a duty of reasonable care. In Green, 593 So.2d 634, the supreme court held that state law may be applied as a supplement to the federal maritime law if state law does not impermissibly conflict with the federal maritime law. Relying on the principle set forth in Green, we utilize Louisiana's invitee law to supplement federal maritime law.
Louisiana law firmly recognizes that a business proprietor owes a duty to provide his patrons with a reasonably safe place. Harris v. Pizza Hut of La., Inc., 455 So.2d 1364 (La.1984). Although he is not the insurer of his patrons or guests, the proprietor owes them a duty to exercise reasonable care to protect them in both their person and their property. Borne v. Bourg, 327 So.2d 607 (La.App. 4 Cir.1976); Anderson v. Clements, 284 So.2d 341 (La.App. 4 Cir.1973). The duty to patrons is a general duty to protect and extends to harm from insult, annoyance, and danger. Id. The proprietor's general duty toward his patrons has been construed to encompass a number of more particular obligations. First, the proprietor must himself refrain from any conduct likely to cause injury to a guest. Id. He must maintain his premises free from unreasonable risks of harm or warn patrons of known dangers thereon. Miguez v. Urban Dev., Inc., 451 So.2d 614 (La.App. 5 Cir.), writ denied, 452 So.2d 1176 (La. 1984). Additionally, the proprietor must exercise reasonable care to protect his guests from harm at the hands of an employee, another guest, or a third party. Anderson, 284 So.2d at 344; Pennington v. Church's Fried Chicken, Inc., 393 So.2d 360 (La.App. 1 Cir.1980); Cooper v. Ruffino, 172 So.2d 717 (La.App. 4 Cir.1965).
*319 The duty at issue in this case is the duty to protect a patron from acts of the business owner and his employees. In Matranga v. Travelers Ins. Co., 55 So.2d 633 (La.App.Orl.Cir.1951), Joseph Matranga brought suit against the Travelers Insurance Company and others for injuries sustained when plaintiff, while a customer of a restaurant, was knocked down and injured as result of an altercation between the insured restaurant owner and the owner's brother, who was assisting the owner. The court in Matranga stated that "[i]t is the duty of every storekeeper and restaurant operator to use reasonable care in the protection of his patrons and guests. Particularly, must he, himself, refrain from any act or conduct likely to cause injury to a guest." Id. at 636 (Emphasis added). Furthermore, in Anderson, 284 So.2d 341, the court stated that a proprietor's guests "have a right to rely on the belief they are in an orderly house and are protected from injury by the exercise of reasonable care for their safety by the operator of the establishment or his representative." Id. at 344 (citations omitted).
In the case sub judice, Players actions of refusing to remove the handcuffs and carrying Plaintiff down three flights of stairs were not reasonable under the circumstances. It is no secret that Players encourages their invitees to drink as a means to facilitate gambling. Attractive young waitresses with fish net stockings supply an endless fountain of alcohol to the patrons. On the night of the incident, Plaintiff drank free beer for eight hours. Players utilized the waitresses and the free beer to further their business and their tactics were to the detriment of Plaintiff. It is obvious that Plaintiff's drinking resulted in him being confused and disoriented causing him to become boisterous and refusing to leave the casino. All of this was very foreseeable and constitutes the proximate cause of the officers being called to the scene and leading Plaintiff to the deck. Although, Players had a right to remove Plaintiff from the poker room, we find that they owed him a duty of using reasonable care for his safety and using the least force necessary to accomplish their task. They breached this duty and in doing so caused severe injury to Plaintiff.
Players attempts to justify their actions by stating that the boat was overcrowded and that they did not have a sufficient amount of security officers to attend to Plaintiff. Players' justification only supports our conclusion that it acted unreasonably and breached the duty owed to Plaintiff, an invitee. The testimony of Players' security officers illustrates this breach of duty. First, Thomason testified that the decision to handcuff Plaintiff was based on the fact that "[i]t was very busy. We had work that had to be conducted, too." Additionally, Security Officer Craig Campbell, in his testimony, admits that the boat was overcrowded and informed the court why Plaintiff was arrested and carried down three flights of stairs. In his testimony, he stated that "[j]ust the fact that he refused to leave. Being busy, we didn't have time to allow one officer to stay with him throughout the night until he decided to leave. So, the decision was finally made to go ahead and take him off the boat." (Emphasis added).
As stated in Matranga, a business owner has a duty to refrain from any act or conduct likely to cause injury to a guest. Players' was fully aware of the fact that on certain nights the boat was filled to capacity. Their failure to hire an adequate number of security officers cannot justify the use of excessive force in removing Plaintiff from their premises.
Utilizing the Kyle factors and the invitee duty, we conclude that the totality of the circumstances surrounding the arrest, supports a finding that Players' employees used excessive force in arresting Plaintiff, who was 69-year-old patron at the time of the incident, by refusing to remove the handcuffs and carrying him down three flights of stairs in a prone position.

*320 Damages:

The sixth assignment of error is that the trial court erred when it failed to award damages for the injuries Plaintiff incurred. Plaintiff seeks damages for the claim of false arrest/imprisonment and for his personal injuries. We will discuss damages in relation to the excessive force claim.
Montgomery v. Opelousas Gen. Hosp., 546 So.2d 621 (La.App. 3 Cir.), writ denied, 551 So.2d 630 (La.1989), defines and sets forth items to consider in assessing general damages. Montgomery states: "[g]eneral damages are those which may not be fixed with pecuniary exactitude; they instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification, or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms." Id. at 623. Additionally, in Savelle v. Heilbrunn, 552 So.2d 52, 59 (La.App. 3 Cir.1989), writ denied, 556 So.2d 1267 (La.1990), this court stated that "[i]n making an initial award of damages at the appellate level, we are not limited to an award of either the lowest or highest amount we would affirm. Rather, we set the award in an amount which is just compensation for the damages revealed by the record." Moreover, "[t]he primary considerations in assessing damages are severity and duration of injured party's pain and suffering." Holt v. Rapides Parish Police Jury, 574 So.2d 525, 529 (La. App. 3 Cir.1991). (Emphasis added).
Dr. Bernauer diagnosed Plaintiff with a strained shoulder, biceps tendon rupture and partial tear of the rotator cuff. He concluded that the injuries were the result of Plaintiff being handcuffed and carried down the stairs. For the last two years, Plaintiff has been subjected to periodic injections to reduce pain. According to Dr. Bernauer, Plaintiff will experience continual pain throughout his life and will require periodic injections. Thus, we conclude that Plaintiff has experienced severe physical pain and suffering for the last three years. More important is the fact that Plaintiff will continue to suffer pain. Plaintiff has also experienced a lifestyle change. Due to the torn rotator cuff, he can no longer hunt, fish, or cut grass. In fact, Plaintiff has difficulty raising his right arm. Thus, many everyday activities are painful.
In Dumas v. Angus Chem. Co., 31,400 (La.App. 2 Cir. 1/11/99); 728 So.2d 441, writ denied, 99-751 (La.4/30/99), 741 So.2d 19, the court stated that a plaintiff may recover mental anguish damages when the conduct is directed at him and the circumstances show an especial likelihood of genuine and serious mental distress.
In the instant case, Plaintiff testified that he found it humiliating to be handcuffed and paraded through the hotel lobby. Shawn Saucier, Plaintiffs son, testified that his father has become a "broken spirited person" due to the injuries and physical limitations. According, to Gina Saucier, Plaintiffs daughter-in-law, since the accident, Plaintiff has become withdrawn and he rarely leaves his house. Thus, the record indicates that the incident caused Plaintiff to suffer genuine and serious mental distress.
Considering the facts of this case and the standards set forth in the jurisprudence, we find that the trial court abused its discretion. We award Plaintiff $150,000.00 in general damages and $16,117.93 in medical specials.

DECREE
For the foregoing reason, we affirm the trial court's granting of a directed verdict on Plaintiffs false arrest claim and its finding that Players did not falsely imprison Plaintiff. We reverse the trial court's finding concerning use of excessive force and conclude that Players' security officers used excessive force. We award Plaintiff $150,000.00 in general damages and $16,117.93 in medical expenses.
All costs of this appeal are assessed to Defendant, Players Lake Charles.
*321 AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
WOODARD, J., CONCURS IN THE RESULT.